78 N.J. 122 (1978)
393 A.2d 267
RED BANK REGIONAL EDUCATION ASSOCIATION, A NEW JERSEY CORPORATION, PLAINTIFF-RESPONDENT,
v.
RED BANK REGIONAL HIGH SCHOOL BOARD OF EDUCATION, A BODY CORPORATE AND POLITIC, STATE OF NEW JERSEY, DEFENDANT-APPELLANT.
The Supreme Court of New Jersey.
Argued May 8, 1978.
Decided August 3, 1978.
*126 Mr. Robert H. Otten argued the cause for appellant (Messrs. Crowell and Otten, attorneys; Mr. Otten and Mr. Michael J. Fasano on the briefs).
Mr. Peter S. Falvo, Jr. argued the cause for respondent (Messrs. Morgan and Falvo, attorneys).
*127 Mr. Don Horowitz, Deputy General Counsel, argued the cause for amicus curiae New Jersey Public Employment Relations Commission (Mr. Sidney H. Lehmann, General Counsel, attorney; Mr. Lehmann and Mr. James F. Schwerin, Deputy General Counsel, on the brief).
The opinion of the court was delivered by PASHMAN, J.
Plaintiff Red Bank Regional Education Association and defendant Red Bank Regional High School Board of Education were parties to a collective negotiation agreement covering a unit comprised of the Board's teaching employees. That agreement incorporated a grievance resolution procedure with binding arbitration as its terminal step. A "grievance" is defined therein as "a complaint by a teacher that there has been as to him a personal loss, injury or inconvenience because of a violation, misinterpretation or inequitable application of Board policy, this Agreement or an administrative decision affecting teachers." Identical definitional language appears in the previous and subsequent collective agreements between the parties. The Association claimed a right to file grievances otherwise within the contractual definition of a grievable issue in its own name, as the majority representative of the unit employees, whenever it deemed such action necessary. An attempt by the Association to file such a grievance was rebuffed when the Board successfully sought temporary injunctive relief against that maneuver. The Association thereupon instituted this separate action in the Chancery Division seeking a judicial declaration that it possessed a statutory right to "institute and process grievances in its own name and upon its own impetus" which superseded any provision of the collective agreement purporting to deny it that ability.[1]
*128 The Board argued before the trial judge that the right sought by the Association was one which could be acquired only through negotiated agreement. Over the course of negotiations for several contracts, the Board has steadfastly refused to accede to the Association's proposals to expand this aspect of the contractual definition of "grievance." The Board claimed that the Association had always abandoned its demand in exchange for other negotiating concessions from the Board. The result of this trade off, according to the Board, is a contractual grievance procedure under which only an individual employee possesses the right to initiate a grievance, with the Association retaining a contractual right to process all grievances so initiated until a resolution satisfactory to it has been achieved.[2] In the *129 Board's view, this situation did not offend any statutory requirements.
The Association claimed that the right of a majority representative to file grievances was mandated by the New Jersey Employer-Employee Relations Act, L. 1968, c. 303, as amended L. 1974, c. 123, N.J.S.A. 34:13A-1 et seq. (the Act), which provides, in pertinent part:

* * * * * * * *
Public employers shall negotiate written policies setting forth grievance procedures by means of which their employees or representatives of employees may appeal the interpretation, application or violation of policies, agreements and administrative decisions affecting them, provided that such grievance procedures shall be included in any agreement entered into between the public employer and the representative organization. * * *
[N.J.S.A. 34:13A-5.3 (emphasis added)]
The Association found in this statutory language a legislative command that both the individual employees and their chosen representative must be able to present grievances to the public employer. Thus, in the Association's view, a majority representative did not need to negotiate to acquire the right to have grievances it presents in its own name (hereinafter "organizational" grievances) accepted for processing by a public employer, since that right is explicitly granted by a statute. According to the Association, any contractual provision purporting to abrogate that right is unenforceable.
The trial judge, in an oral opinion, denied the declaratory relief sought by the Association. He construed the word "or" in N.J.S.A. 34:13A-5.3 to have a disjunctive meaning and agreed with the Board that according the right to initiate grievances solely to the individual employees was sufficient to comply with the statute. In his view, a majority representative's statutory role in grievance presentation was only that of filing a grievance in the name of an individual teacher who had requested that such action be taken on his behalf. He held that a grievance is a personal right of an *130 individual employee. Although no individual employee opposing the filing of an organizational grievance over a contractual violation allegedly suffered by him exists in this case, the judge was concerned with the rights of such a person. He reasoned that the statute could not be construed in such a manner as would sanction a majority representative's filing of an organizational grievance against the wishes of an employee.
The Appellate Division, acknowledging that the "matter is a difficult and close one of statutory interpretation," reversed in a brief per curiam opinion, 151 N.J. Super. 435, 437 (App. Div. 1977). It avoided reliance on a construction of the "or" in N.J.S.A. 34:13A-5.3 in favor of the "more fruitful endeavor" of ascertaining the legislative purpose underlying the statute. 151 N.J. Super. at 438. The appeals court found that a restatement of the question before it eased its task:
* * * whether the Legislature intended to limit grievance rights to situations where individuals wanted to, were in a position to, were unafraid to and were disposed to file a grievance.
[151 N.J. Super. at 439]
With the question thus posed, the focus of the Appellate Division's analysis was on the rights of the timorous employee who fears the effect on his employment tenure of his entering the highly-visible role of a grievant. This emphasis on the potential "chilling" effect on individual action by reason of the threat of adverse employment consequences viewed the issue from a perspective different from that of the trial judge, whose concern was with an individual employee being involuntarily thrust into that spotlight by the Association's filing of a grievance where he chose not to do so. The Appellate Division envisioned a situation where an employee might feel aggrieved but be afraid to file a grievance in his own name for fear of harmful repercussions to his relationship with the employer. In such a case the employee would want a grievance filed not in his name but in the *131 name of all employees in the unit  i.e., in the name of the Association as the unit's majority representative. The Appellate Division stressed the principles of collectivity underlying the legislative scheme expressed in the Employer-Employee Relations Act and the constitutional right of public employees to organize, N.J. Const. (1947) Art. I, para. 19. 151 N.J. Super. at 439. The court stated its reasoning in support of its holding as follows:
We cannot conceive that the Legislature would on the one hand forcefully implement the constitutional guarantee of the benefits of collectivity in negotiation and then totally shortcircuit the system by requiring individual activity at the moment of truth when the results of the collective bargaining came into question. Such a construction would challenge the integrity of the collective bargained contract and insult legislative purpose.
From a strictly pragmatic viewpoint we can think of many reasons causing a teacher to resist the individual filing of a grievance, among which might be a wholly salutary concern for her relationship and effectiveness with her students, or, less altruistically, a human concern for nontenure status. Redress for a violation should not "be made contingent upon the intrepidity of the individual employee." Industrial Union of Marine & Shipbuilding Wkrs. v. N.L.R.B., 320 F.2d 615, 619 (3 Cir.1963), cert. den. 375 U.S. 984, 84 S.Ct. 516, 11 L.Ed.2d 472 (1964).
[151 N.J. Super. at 439-440]
From this determination, the Board sought review by this Court. Its petition for certification was granted, 75 N.J. 529 (1977), and we requested the parties and the Public Employment Relations Commission, as amicus curiae, to file supplemental briefs concerning an issue not considered below  whether any existing statutory right of a majority representative to file organizational grievances could be the subject of a contractual waiver. This issue arose from the fact that the terms of the collective agreement did not give the Association the right to initiate a grievance in its own name.
In attempting to determine the proper meaning of the relevant statutory language, both lower courts were correctly concerned with interpreting the statute in a manner consistent *132 with their respective perceptions of the goals the Legislature sought to achieve in enacting the Employer-Employee Relations Act. The variance in the results reached is attributable to the fact that each accorded primacy to a different goal. The trial court was troubled by the danger of union coercion which could result if a majority representative was accorded a totally unrestricted right to initiate organizational grievances without regard to the wishes of the affected employee. The Appellate Division examined the opposite side of that coin and was alarmed at the potential for employer intimidation if an individual employee is required to put himself on the line in order to trigger the grievance mechanism.
Protecting public employees in this state from being victimized at the hands of either public employers or employee organizations is one of the dominant purposes of the Employer-Employee Relations Act. It secures public employees the right to be free from interference from both employers and unions in the exercise of their right to assist or refrain from assisting an employee organization. N.J.S.A. 34:13A-5.3; 5.4(a) (1) and (3), 5.4(b) (1). In our view, neither lower court gave adequate consideration to the dual aims of the Act in this context. The trial court's focus on the problem of non-consensual initiation of an organizational grievance caused it to overlook the potential undesirable consequences of requiring all individual employees who do wish to challenge the propriety of a certain employer action to do so by filing a grievance in their own name.[3] The Appellate Division's discomfort with that *133 prospect resulted in its seemingly unqualified holding that a majority representative possessed a statutory right to initiate grievances on its own in all cases involving disputes within the scope of what we today have held is the statutory definition of grievable matters. See Tp. of West Windsor v. PERC, 78 N.J. 98 (1978). Its decision made no mention of the effect of its holding on the rights of the individual employee who is allegedly aggrieved by employer action but who, for reasons satisfactory to himself, is unwilling to file a grievance on his own or to have an organizational grievance filed on his behalf by the majority representative. With these competing concerns in mind, we turn to consideration of the import of N.J.S.A. 34:13A-5.3 with regard to the initiation of organizational grievances by a majority representative.

I

Right of Public Employees to Have Their Grievances Presented Through Their Majority Representative
The ultimate touchstone for any analysis of public employment labor relations in this state is Art. I, par. 19 of the New Jersey Constitution of 1947 which provides, in pertinent part:
* * * Persons in public employment shall have the right to organize, present to and make known to the State, or any of its political subdivisions or agencies, their grievances and proposals through representatives of their own choosing.
In Lullo v. Intern. Assoc. of Fire Fighters, 55 N.J. 409 (1970), this Court held that the representative selected by a majority of the employees in an appropriate negotiating *134 unit was the "representative[] of their own choosing" for all of the employees in that unit within the meaning of the constitutional provision for purposes of collective negotiation with their public employer. 55 N.J. at 414-430, 432. Lullo upheld N.J.S.A. 34:13A-5.3's grant of exclusivity to a majority representative in the negotiation of the terms and conditions of employment against constitutional attack by finding in that statute the legislative implementation, rather than abrogation, of the constitutional rights of public employees. Id., at 430. We found that the Constitution did not contemplate that each employee had a right to negotiate his own terms and conditions of employment. We observed that in Art. I, par. 19, the framers of the Constitution
* * * made no effort to detail or to prescribe the nature or scope of the representation or the authority of the representative to act for the employees whether their employment was in the public or the private sector. The decision as to whether there should be a single representative to speak exclusively for all the employees, or multiple representatives to speak for different groups of employees or whether an individual employee should have the right to represent himself in all dealings with his employer, or whether all three forms of representation should be authorized, was left to the Legislature.
[Id., at 415]
No constitutional infirmity was found in the Legislature's choice in N.J.S.A. 34:13A-5.3 to accord a majority representative an exclusive role in the negotiations context.
However, in Lullo we expressly declined to consider the question of whether that exclusivity could constitutionally carry over to the handling of grievances so as to preclude an individual employees from presenting and processing his own grievance where a majority representative has been selected for the unit of which he is a member. We noted that the issue was not before us and that its resolution should await an appropriate case. Id., at 435-36. We similarly refrained from approving or disapproving an Appellate Division ruling on that question in N.J. Turnpike Employees Union v. N.J. *135 Turnpike Authority, 64 N.J. 579, 581-82 (1974), aff'g 123 N.J. Super. 461 (App. Div. 1973). Since we are not faced with any limitation on the ability of the employees to present or process grievances personally, we again intimate no view on the exclusivity question and shall assume, without deciding, that N.J.S.A. 34:13A-5.3 permits unit employees to enjoy at least a concurrent right with their majority representative with respect to the presentation of grievances. Our concern here is with the statutory permissibility of denying a majority representative the right to initiate organizational grievances with the consent of the affected employee.
Nevertheless, we find Lullo's reasoning concerning the constitutional significance of the selection of a majority representative to have relevance beyond the area of collective negotiations. We believe that the rationale of Lullo dictates that a majority representative be considered as the "representative[] of the [unit employees'] own choosing" under Art. I, para. 19 with respect to grievance presentation as well. Nothing in Lullo suggests otherwise. Since the constitutional provision accords public employees the right to present both their "grievances" and "proposals" through their chosen representatives, it would be rather anomalous for a majority representative to be that chosen representative for purposes of collective negotiation under N.J.S.A. 34:13A-5.3 without possessing that status for grievance presentation as well.
We accordingly hold that a representative selected by a majority of the employees in an appropriate unit is their sole chosen representative within the meaning of Art. I, para. 19 for purposes of the presentation of their grievances to their public employer.[4]
*136 When analyzed in light of this holding, the meaning of the relevant language in N.J.S.A. 34:13A-5.3 becomes more clear. We have assumed arguendo, see ante at 135, that an individual employee has a statutory right to present his grievances personally notwithstanding the existence of a majority representative and is free to choose to do so. We interpret N.J.S.A. 34:13A-5.3 to guarantee to each unit employee the right to have his grievances presented through his majority representative if he so desires. This conclusion is essential to the employees' meaningful exercise of their constitutional right to present grievances through their chosen representatives. Arguments addressed to the asserted adequacy of personal presentation of grievances as a substitute for their presentation through a chosen representative overlook the fact that the Constitution has authoritatively resolved the issue by specifically according public employees a right to the latter. The Legislature could not, consistent with Art. I, para. 19, deprive public employees of that right. See Lullo, supra, 55 N.J. at 416. While the Legislature is generally free to grant public employees rights in addition to those guaranteed in the Constitution, Id., it may not abrogate those constitutional rights by creating inconsistent statutory rights to operate in their place. In short, public employees could not constitutionally be limited to presenting their grievances personally.
However, we perceive no such intent on the part of the Legislature in its formulation of the grievance presentation rights of public employees in N.J.S.A. 34:13A-5.3. Rather, as we held in Lullo with respect to collective negotiations, we believe that the statute seeks to fully effectuate the constitutional rights of public employees by explicitly implementing their representational rights in the grievance area. When a majority representative has been selected, all of the employees in the unit it represents have effectively chosen it as their representative for the presentation of grievances. We have recently recognized that the Art. I, para. 19, rights of public employees are being exercised when their majority *137 representative presents a grievance on their behalf. See Passaic Cty. Probation Officers Assoc. v. Cty. of Passaic, 73 N.J. 247, 256-257 (1977); cf. Winston v. Bd. of Ed. of So. Plainfield, 125 N.J. Super. 131 (App. Div. 1973), aff'd 64 N.J. 582 (1974). The statute must be read as according the majority representative, by virtue of its status as the constitutional representative of the unit employees, the right to initiate an organizational grievance when requested to do so by a unit employee who claims that he has been aggrieved by an action of the public employer. While N.J.S.A. 34:13A-5.3 permits such an employee to present his grievance personally, the statute affords him the option of availing himself of the representation in grievance presentation secured him by Art. I, para. 19. That representation is to be provided by the majority representative of the particular unit of which the affected employee is a member.[5] When an employee elects to have his grievance presented through his majority representative, it may no longer be accurately viewed as solely his grievance. It is then also the grievance of his unit, brought on behalf of the entire membership of the unit in the name of their chosen collective representative.
Thus, we hold that where a majority representative exists, the members of the unit it represents possess a statutory right to have such organizational grievances presented on their behalf. Affording the individual employees the right to initiate grievances on their own, as is the case under the contract involved herein, is a constitutionally inadequate substitute for the right to have that grievance presented as an organizational grievance by the majority representative. *138 The ability to have grievances so presented where a majority representative exists is an integral element of the employees' rights under Art. I, para. 19.
We agree with the Appellate Division that this result is supported by the legislature policy underlying the Employer-Employee Relations Act. The principle of collectivity, the advantages of which we discussed extensively in Lullo, in public employment labor relations is at the heart of the legislative scheme. Indeed we have noted that Art. I, para. 19 is itself "oriented toward collectivity." Lullo, supra, 55 N.J. at 420. We too find inconceivable the suggestion that the Legislature intended to limit organized public employees' enjoyment of the salutary effects of collective representation  the "commonly known means of giving potency and practical effect to the guaranteed right to organize," Id., at 421  only in the negotiations context. We have observed that
[t]he legislative aim in writing [N.J.S.A. 34:13A-5.3] was to aid, not to hinder, public employees in their relationship with their employers.
[Id., at 429]
Permitting a public employer to require individual action at the critical moment when vindication of employee rights is at stake would surely "short circuit" the system of collectivity the Legislature sought to promote in the Act and weaken its benefits. An employee who views the potential consequences of presenting a grievance in his own name with great trepidation would be forced to endure a possible violation of his rights without redress if he is unable to have that grievance presented through his majority representative. Requiring an individual to put himself on the line as the sole means of initiating a grievance is inherently contrary to the very concept of collectivity and would, if sanctioned, bring about a "prejudicial dilution" of the basic right to organize secured by the Constitution. Cf. Id., at 425.
Moreover, our interpretation of the intended meaning of the relevant language of N.J.S.A. 34:13A-5.3 *139 is confirmed by a provision of the 1974 amendments to the Employer-Employee Relations Act, L. 1974, c. 123. Portions of what is now N.J.S.A. 34:13A-5.4 were enacted in response to this Court's determination in Burlington Cty. Evergreen Park Mental Hosp. v. Cooper, 56 N.J. 579 (1970), that the original version of the Act did not confer jurisdiction over alleged unfair labor practices upon the Public Employment Relations Commission (PERC). N.J.S.A. 34:13A-5.4(a) (5) prohibits public employers from, inter alia, "* * * refusing to process grievances presented by the majority representative." A public employer which does so refuse commits an unfair practice, the remedying of which is entrusted to PERC. N.J.S.A. 34:13A-5.4(c); see generally, Galloway Twp. Bd. of Ed. v. Galloway Twp. Ed. Assoc., 157 N.J. 74 (1978). Although its legislative history does not indicate that N.J.S.A. 34:13A-5.4(a) (5) was intended to affect the interpretation of the provisions of N.J.S.A. 34:13A-5.3 governing the presentation of grievances, we believe that this subsequent enactment clarifies any ambiguity in the language of N.J.S.A. 34:13A-5.3.
Significantly, N.J.S.A. 34:13A-5.4(a) (5) does not make it an unfair practice for a public employer to refuse to process a grievance presented personally by an individual employee or one presented through a non-majority representative. Explicit statutory protection is given to the presentation of grievances only when done by a majority representative. Entitlement of this preferred status is not qualified by any statutory requirement that the majority representative be contractually authorized to present grievances. The statutory protection is afforded, without limitation, to all grievances presented by a majority representative. The combination of N.J.S.A. 34:13A-5.3 and 5.4(a)(5) would seem to manifest a legislative intention to entrust primary responsibility for the presentation of employee grievances to a majority representative (where one exists) rather than to the aggrieved individual himself. We can only infer from this amendment to the Act that N.J.S.A. 34:13A-5.3 must *140 be construed to safeguard the right of the individual unit employees to have their grievances presented through their majority representative.[6]

II

Contractual Waiver
We turn to the Board's contention that the Association has waived any statutory right it may have possessed to present grievances in its own name by agreeing to the provision of the collective agreement which limits the right of grievance presentation to the individual employees. The propriety of a contractual waiver of statutory rights is well-established in the private sector. See National Labor Relations Board v. Magnavox Co., 415 U.S. 322, 94 S.Ct. 1099, 39 L.Ed.2d 358 (1974); Mastro Plastics v. National Labor Relations Board, 350 U.S. 270, 86 S.Ct. 1862, 16 L.Ed.2d 682 (1956). To be given effect, any such waiver must be clearly and unmistakably established, and contractual language alleged to constitute a waiver will not be read expansively. United Steelworkers v. National Labor Relations Board, 536 F.2d 550, 555 (3 Cir.1976).
*141 However, we need not consider the applicability of the waiver doctrine in public employment labor relations in New Jersey in this case. We have today held that when a specific statute sets a term or condition of public employment, a negotiated agreement in contravention of that statute is not authorized by the Employer-Employee Relations Act. State v. State Supervisory Employees Ass'n, 78 N.J. 54 (1978). Employee rights with respect to the presentation of grievances to their employer clearly qualify as terms and conditions of their employment. We have held that the relevant sentence of N.J.S.A. 34:13A-5.3 mandates the right of unit employees to have their grievances presented through their majority representative. The statute thus sets that particular term of public employment. Since a contractual waiver of that right of the employees would necessarily contravene the command of N.J.S.A. 34:13A-5.3, it could not be given effect. The waiver doctrine is not relevant with respect to terms and conditions of public employment set by statute. We hold that the employees' right to have grievances presented through their majority representative is a term and condition of employment set by statute and, accordingly, may not be modified by negotiated agreement.

III

Presentation of an Organizational Grievance Against the Wishes of the Allegedly Aggrieved Employee
Our holding that N.J.S.A. 34:13A-5.3 must be interpreted to mandate the right of a majority representative to file organizational grievances in order to effectuate the constitutional right of the unit employees to have their grievances presented through their collectively chosen representative presupposes the existence of consent to the initiation of such grievances on the part of the affected employee. In the absence of such consent, however, the propriety of such action by the majority representative, no matter how *142 highly motivated would differ. Because no "involuntary grievant" of the sort envisioned by the trial judge, see ante at 129, exists in this case, we need not reach the question of the lawfulness of a majority representative's non-consensual initiation of an organizational grievance.
Nevertheless, it is important to note that the question of consensual initiation of any organizational grievance would not be a legitimate matter of concern for the public employer. Its obligation to accept organizational grievances is not conditioned on its verification that the affected employee has consented to the filing of the grievance. So far as it is concerned, all organizational grievances are consensual. The Board has argued before us that a public employer has a valid interest in ensuring that its employees are not being coerced by their majority representative. The short answer to that contention is that the Legislature has chosen to assign responsibility for the prevention of such possibly unlawful conduct to PERC, not to the public employer. N.J.S.A. 34:13A-5.4(c). Normally, inquiry into the consent question would occur only if the "involuntary grievant" chose to file an unfair practice charge with PERC against the majority representative. Moreover, the aid of their employer is not necessary to protect the unit employees against possible overreaching by their majority representative. They are always capable of availing themselves of a representation proceeding under PERC's auspices to replace or oust the majority representative if they so desire. See N.J.A.C. 19:11-1.1 (a) (1), (3).
The judgment of the Appellate Division is affirmed.
CONFORD, P.J.A.D. (temporarily assigned), dissenting.
I would reverse the judgment of the Appellate Division in this case because I believe that plaintiff's complaint for a declaratory judgment should have been dismissed as not based on an actual controversy involving a concrete contested issue. New Jersey Turnpike Authority v. Parsons, 3 N.J. *143 235, 240 (1949); Sanders v. Cuba Railroad Co., 21 N.J. 78, 89 (1956).
As the Appellate Division correctly observed, the issue of law presented to the Court here for declaration of rights "is a difficult and close one of statutory interpretation." Red Bank Ed. Assn. v. Red Bank High Bd. of Ed., 151 N.J. Super. 435, 437 (1977). Yet, although the complaint seeks judicial affirmation that "plaintiff [union] is entitled by statutory right to institute and process grievances in its own name and upon its own impetus," there is no allegation of the existence of an actual grievance, whether of a union member or of the union itself, or both, requiring initiation or processing. All that is sought is a raw advisory opinion as to the meaning of the statute concerning negotiation of public employment grievances, N.J.S.A. 34:13A-5.3, in relation to who may initiate the processing of a grievance when the collective labor contract specifies that "a grievance * * * must be initiated by the teacher * * *" and that "[t]he Association may process a grievance through all levels of the grievance procedure even though the aggrieved person does not wish to do so."
No actual grievance is posited here. The rights of the parties in an actual case could very well depend upon such variables as (a) the nature of the complaint of the employee; (b) whether it affects only one or more persons; (c) whether, if affecting only one person, it is of a nature indirectly affecting others: (d) whether the affected person is a member of the union; or (e) whether the aggrieved person is indifferent to the processing of the complaint but does not wish formally to initiate it, or whether, on the other hand, he affirmatively objects to its processing and has so advised the union. Only upon the presentation of a specific set of facts involving one or more of these variations, and in the context of a real dispute between the three entities, the individual employee, the union and the employer, could a court be expected to render a useful and significant adjudication *144 of rights within the intent and purpose of the Uniform Declaratory Judgments Act. N.J.S.A. 2A:16-52.
It is settled that the latter statute is not intended for the benefit of those who seek "advisory opinions"; that courts should "refrain * * * from functioning in the abstract" and should "decide only concrete contested issues conclusively affecting adversary parties in interest." New Jersey Turnpike Authority v. Parsons, 3 N.J. 235, 240 (1949). These principles are disregarded by the undertaking of the Court in the present case to render an abstract declaration of rights on an entirely supposititious case.
In my view, the entertainment of this litigation under the attendant circumstances creates a bad precedent. Elucidation of the complex legal questions involved would better await presentation of specific controversies over actual grievances.
For affirmance  Chief Justice HUGHES and Justices SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER and HANDLER  6.
For reversal  Judge CONFORD  1.
NOTES
[1] The original action initiated by the Board to restrain the Association from pressing a grievance filed in its own name was dismissed "without prejudice" by the consent of the parties when the Association withdrew the grievance it had filed. For its own strategic reasons, the Association commenced the instant action rather than seeking the declaratory judgment requested herein as a counterclaim to the Board's action for injunctive relief. While the better practice would have been for the Association to have taken the latter action, we are satisfied that the controversy between the parties is sufficiently concrete, despite the abstract character of the pleadings herein, to warrant a decision on the merits rather than a dismissal because of its non-justiciability. Compare Lullo v. Intern. Assoc. of Fire Fighters, 55 N.J. 409, 435-36 (1970). It is apparent from the circumstantial context of this case that the Board has refused to accept an actual grievance filed by the Association in its own name.
[2] The word "initiate" will be used interchangeably with the words "file" and "present" to refer to the initial invocation of the grievance resolution procedure, where the complaint is first brought to the attention of the employer. The word "process" will be used to refer to events taking place subsequent to the initiation of a grievance which are directed towards the adjustment or resolution of the complaint.

The Association here possessed an express contractual right to "process a grievance through all levels of the grievance procedure even though the aggrieved person does not wish to do so." By reason of the contractual definition of "grievance," this right applies only with respect to grievances originally filed by individual employees. However, the dispute herein concerns only the Association's alleged right to initiate grievances on its own; hence we are not called upon to consider the nature of the Association's rights with respect to grievance processing vis-a-vis those of the individual employees. See post at 135-136.
[3] Under the particular collective agreement involved in this case, and arguably as a matter of statutory mandate, the right of an individual employee to initiate his grievance in his own name is inviolate. Thus, those employees who are not apprehensive about exposing themselves to the potential adverse consequences of being a grievant may always file a personal grievance on their own. We refer here to an aggrieved employee who, despite the availability of that avenue or relief, is deterred from pursuing his contractual remedy in order to obtain vindication of his rights because of the agreement's requirement that he present his grievance personally rather than through (i.e., in the name of) the majority representative of the unit of which he is a member.
[4] The majority representative's status as the employees' chosen representative for constitutional purposes is, of course, not conclusive of the exclusivity vel non of its role in grievance presentation. As indicated in Lullo, that issue is a matter for legislative choice subject, of course, to any applicable constitutional limitations.
[5] Under our analysis herein, the employee has a choice of presenting his grievance personally or through the majority representative of his unit, the chosen representative of all unit employees for purposes of Art. I, par. 19. When a majority representative has been selected for the unit of which he is a member, an employee may not have his grievance presented by a minority representative, as that choice is precluded by the express terms of N.J.S.A. 34:13A-5.3.
[6] Since the substance of the Association's complaint herein alleges conduct by the Board which arguably constituted an unfair practice under N.J.S.A. 34:13A-5.4(a) (5) and thus within the exclusive jurisdiction of PERC pursuant to N.J.S.A. 34:13A-5.4(c), the better practice would have been for the Association to file an unfair practice charge with PERC rather than instituting the instant declaratory judgment action. We have considered withholding decision herein, vacating the judgments below and having the matter transferred to PERC for its initial adjudication. See Patrolmen's Benevolent Association v. Montclair, 70 N.J. 130, 136 (1976). Nevertheless, since we have the benefit of PERC's expertise as a result of its amicus participation in this appeal and because of the strong likelihood that we would merely be postponing our consideration of the issues presented, we have determined that a dispositive adjudication is appropriate in order to expedite the resolution of this case.