NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4004-24

SHAUL MOSHE SUGAR,

     Plaintiff-Appellant,

v.

DAVID POLLACK, individually,
JOSEPH KAHN, individually,
VISIONRE,

     Defendants,

and

MORDECHAI DOMBROFF, a/k/a
MORDECLAI DOMBROFF,
individually, NECHAMA
DOMBROFF, individually, HONOR
MEADOWS, LLC, SUNTREE
INVESTMENT GROUP, LLC and
HONOR MEADOWS OWNER, LLC,

     Defendants-Respondents.

_____

Argued February 24, 2026 – Decided March 12, 2026

Before Judges Perez Friscia and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-1092-25.

Deborah A. Plaia argued the cause for appellant (The Law Offices of John J. Novak, PC, attorneys; John J. Novak and Deborah A. Plaia, on the briefs).

Jason J. Rebhun argued the cause for respondents (The Law Offices of Jason J. Rebhun, PC, attorneys; Jason J. Rebhun, on the brief).

PER CURIAM

Plaintiff Shaul Moshe Sugar appeals from a July 22, 2025 order compelling arbitration of his claims against defendants Mordechai Dombroff (Dombroff), Honor Meadows LLC (Honor Meadows), Honor Meadows Owner LLC (HMO), and Suntree Investment Group, LLC (Suntree) (collectively defendants).[1] We affirm.

I.

The relevant facts are not disputed. In 2024, plaintiff and Dombroff agreed to enter into a joint venture for the development of a real estate project in Lebanon, Indiana. Honor Meadows, an Indiana limited liability company, "was formed to acquire, develop[,] and operate 7.06 acres of land located

---

[1] The July 22 order stayed plaintiff's claims against David Pollak, Joseph Kahn, VisionRE, and Nechama Dombroff, and dismissed certain claims against Nechama Dombroff without prejudice. Those aspects of the July 22 order are not the subject of this appeal.

A-4004-24

generally at 1050 W. Noble Street, Lebanon, Boone County, Indiana" (the project). Honor Meadows was to "own the [p]roject through" its wholly owned subsidiary HMO.

Effective July 15, 2024, plaintiff and Dombroff, as manager of Suntree, executed an "Operating Agreement of Honor Meadows LLC" to facilitate the project (Operating Agreement). Pursuant to the terms of the Operating Agreement, plaintiff invested $1,500,000 in the project and guaranteed an additional $10,000,000 of financing.

Section 10.18 of the Operating Agreement, entitled "ARBITRATION OF DISPUTES," (the arbitration agreement) provides:

> Any dispute among the Members under this Agreement (except as otherwise provided below) shall be resolved and finally determined by arbitration as set forth herein. Any arbitration pursuant to this [s]ection 10.18 shall, to the fullest extent permitted by law, be held in Ocean County, New Jersey under the rules of the American Arbitration Association. If the parties do not mutually agree upon an arbitrator within five (5) business days after notice from one party to the other, then any party may apply to the American Arbitration Association located in Ocean County, New Jersey for the appointment of an arbitrator. In connection with any such application, any party may propose one or more persons to act as the arbitrator; provided, that any such person or persons shall be independent and shall be (x) a licensed attorney with at least ten (10) years' experience in connection with the development and operation of real estate similar to the Project or (y) a

3

retired judge of any court located in Ocean County, New Jersey. After the appointment of the arbitrator, the parties shall have the right to take depositions and to obtain discovery by other means regarding the subject matter of the arbitration as if the matter were pending in the State Court of Ocean County, New Jersey, although the arbitrator may, for good cause shown, limit the nature and extent of such discovery and establish or modify the schedule relating to any discovery requests or applications relating thereto. The arbitrator shall have the power to decide all other procedural issues, including the following: the date, time and place of any hearing; the form, timing and subject matter of any pre-hearing documents to be submitted by the parties; and any evidentiary or procedural issues that may arise at or in connection with any arbitration hearing. The award of the arbitrator shall be conclusive and binding, and any party may seek to have the award confirmed by way of a court order. All fees and expenses of the arbitrators and all other expenses of the arbitration shall be borne initially by the Members pro rata in accordance with their Percentage Interests, but ultimately shall be borne by the non-prevailing party in the arbitration. Nothing contained herein shall be construed as to prevent any party from seeking provisional or equitable relief from a court on the basis that, unless such relief is obtained, any award that the arbitrator may make will be ineffectual, to seek injunctive relief from a court or seek enforcement of an arbitration order from a court.

Section 10.19 of the Operating Agreement, entitled "VENUE," provides:

The parties agree that any suit, action or proceeding with respect to this Agreement that is not subject to arbitration pursuant to [s]ection 10.18 shall be brought in the state or federal courts sitting in Ocean County in the State of New Jersey. The parties hereto hereby

4

accept the exclusive jurisdiction of those courts for the purpose of any such suit, action or proceeding. The parties hereto hereby irrevocably waive, to the fullest extent permitted by law, any objection that any of them may now or hereafter have to venue of any suit, action or proceeding arising out of or relating to this Agreement or any judgment entered by any court in respect thereof brought in Ocean County, New Jersey, and hereby further irrevocably waive any claim that any such suit, action or proceeding brought in Ocean County, New Jersey has been brought in an inconvenient forum.

Section 10.20 of the Operating Agreement, entitled "WAIVER OF TRIAL BY JURY," provides:

EACH OF THE PARTIES HERETO AGREES THAT, IN THE EVENT OF ANY SUIT OR LEGAL ACTION BETWEEN OR AMONG THE MEMBERS ARISING IN CONNECTION WITH THIS AGREEMENT, THEY SHALL WAIVE THEIR RIGHT UNDER ANY APPLICABLE LAW TO SEEK A TRIAL BY JURY.

On April 22, 2025, plaintiff filed his complaint in this action asserting claims against defendants based on the New Jersey Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -277, common law fraud, and negligence. He alleged Pollak, whom he trusted because they "belong to the same community and have intertwined common and associated . . . acquaintances and friends," "act[ed] [as] a pitchman for . . . Dombroff" and approached plaintiff with the project. He alleged "Pollak made numerous representations, promises[,] and assurances to

A-4004-24

plaintiff upon which [he] relied" that "were false and/or misleading and/or contained omissions." Plaintiff asserted various other claims against the non-moving defendants relating to the project.

Plaintiff alleged defendants "acted in a concerted harmony conspiring to defraud plaintiff as the 'deal' [was] not [a] good deal at all but rather merely a conduit for revenue for the defendants." He claimed, "[t]he false, lofty rental figures presented to plaintiff were not supported by the market" and "were intended to be relied upon by would be investors, such as plaintiff . . . and representation of such false rental figures was a material misrepresentation." He alleged defendants "engaged in a pattern of deceptive, fraudulent, and unconscionable commercial conduct," "made affirmative misrepresentations," and "made omissions by knowingly concealing and/or suppressing material facts."

Defendants and Nechama Dombroff filed a motion to dismiss for failure to state a claim pursuant to Rule 4:6-2(e), failure to plead fraud with specificity pursuant to Rule 4:5-8(a), or, in the alternative, to dismiss "any claim[s] between the members of" Honor Meadows in favor of arbitration "pursuant to [s]ection 10.18 of the Operating Agreement." In response, plaintiff filed a cross-motion for leave to file and serve an amended complaint adding claims against

A-4004-24

defendants based on: (1) the New Jersey Uniform Securities Act, N.J.S.A. 49:3-47 to -89; (2) the Indiana Uniform Securities Act, IC23-19-1-.2 to -7-10; (3) the Securities Act of 1933, 15 U.S.C. §§ 77a-77aa; and (4) the New Jersey Racketeer Influenced and Corrupt Organizations Act (RICO), N.J.S.A. 2C:41-1 to -6.2.

On July 22, 2025, after hearing oral argument, the court entered an order compelling arbitration "pursuant to the terms of the Operati[ng] Agreement section 10.18 as to the signatories to the Operati[ng] Agreement: [plaintiff], . . . Dombroff, Honor[] Meadows . . . , Suntree . . . , and [HMO]." The court "found no prohibition under New Jersey law against arbitrating statutory claims." It determined the arbitration agreement in this case "is a broad, relatively simple, simply written arbitration agreement" that "sets forth clearly that any dispute among the members under this agreement shall be resolved and finally determined by arbitration."

The court noted "[p]laintiff's role and entitlements as a member of [Honor Meadows] are governed by the agreement, which states that, quote, 'any dispute amongst plaintiff and the moving defendants is governed by the operating agreement, which requires adjudication by arbitration and not litigation.'" The court found "that there was mutual assent to arbitrate" and did not find "the fact that statutory claims such as RICO or consumer fraud not being specifically

A-4004-24

delineated as being part of the agreement to arbitrate would be a basis . . . to deny the . . . motion." This appeal followed.

On appeal, plaintiff argues the court erred by compelling arbitration of his statutory claims because he did not "clearly, unambiguously[,] and decisively" agree to arbitrate statutory claims. He also argues "the arbitration clause at issue . . . contains no language providing that [he] waived his right to a trial by jury on statutory claims." Plaintiff additionally argues "the Operating Agreement is ambiguous to the extent it recognizes that certain suits, actions[,] or proceedings, which are not identified, may not even be subject to arbitration."

II.

The enforceability of an arbitration agreement is a question of law, which we review de novo. Skuse v. Pfizer, Inc., 244 N.J. 30, 46 (2020). "Similarly, the issue of whether parties have agreed to arbitrate is a question of law that is reviewed de novo." Jaworski v. Ernst & Young U.S. LLP, 441 N.J. Super. 464, 472 (App. Div. 2015).

The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16, and the New Jersey Arbitration Act, N.J.S.A. 2A:23B-1 to -36, both express a general policy favoring arbitration "as a means of settling disputes that otherwise would be litigated in a court." Badiali v. N.J. Mfrs. Ins. Grp., 220 N.J. 544, 556 (2015).

Under both the FAA and New Jersey law, arbitration is fundamentally a matter of contract. Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 67 (2010); NAACP of Camden Cnty. E. v. Foulke Mgmt. Corp., 421 N.J. Super. 404, 424 (App. Div. 2011).

Arbitration agreements are subject to customary contract law principles. Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 442 (2014). A valid and enforceable agreement requires: (1) consideration; (2) a meeting of the minds based on a common understanding of the contract terms; and (3) unambiguous assent. See id. at 442-45. Consequently, to be enforceable, the terms of an arbitration agreement must be clear, and any legal rights being waived must be identified. Id. at 442-43. When evaluating an arbitration agreement, a court must undertake a two-pronged analysis. First, the court must determine whether the parties have entered into a valid and enforceable agreement to arbitrate disputes. Martindale v. Sandvik, Inc., 173 N.J. 76, 76 (2002). Second, the court must determine whether the dispute falls within the scope of the agreement. Id. at 92.

"[C]ontract terms should be given their plain and ordinary meaning." Kernahan v. Home Warranty Adm'r of Fla., Inc., 236 N.J. 301, 321 (2019) (citing Roach v. BM Motoring, LLC, 228 N.J. 163, 174 (2017)). "A court's

objective in construing a contract is to determine the intent of the parties." Id. at 320. "The plain language of the contract is the cornerstone of the interpretive inquiry; 'when the intent of the parties is plain and the language is clear and unambiguous, a court must enforce the agreement as written, unless doing so would lead to an absurd result.'" Barila v. Bd. of Educ. of Cliffside Park, 241 N.J. 595, 616 (2020) (quoting Quinn v. Quinn, 225 N.J. 34, 45 (2016)). The "court's task [i]s 'not to rewrite a contract for the parties better than or different from the one they wrote for themselves.'" Globe Motor Co. v. Igdalev, 225 N.J. 469, 483 (2016) (quoting Kieffer v. Best Buy, 205 N.J. 213, 223 (2011)).

"No particular form of words is necessary to accomplish a clear and unambiguous waiver of rights." Atalese, 219 N.J. at 444. If, "at least in some general and sufficiently broad way," the language of the clause conveys that arbitration is a waiver of the right to bring suit in a judicial forum, the clause will be enforced. Id. at 447; see also Morgan v. Sanford Brown Inst., 225 N.J. 289, 309 (2016) ("No magical language is required to accomplish a waiver of rights in an arbitration agreement").

"In reviewing such orders, we are mindful of the strong preference to enforce arbitration agreements, both at the state and federal level." Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 186 (2013). That preference, "however,

10

is not without limits." <u>Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A.</u>, 168 N.J. 124, 132 (2001).

Based on our de novo review, we are convinced the court correctly determined the arbitration agreement encompasses plaintiff's statutory claims. It is well settled that parties to an arbitration agreement may waive statutory remedies in favor of arbitration. <u>Id.</u> at 131 (citing <u>Red Bank Reg'l Educ. Ass'n v. Red Bank Reg'l High Sch. Bd. of Educ.</u>, 78 N.J. 122, 140 (1978)). However, the waiver of statutory rights "must be clearly and unmistakably established, and contractual language alleged to constitute a waiver will not be read expansively." <u>Id.</u> at 132 (quoting <u>Red Bank Reg'l Educ. Ass'n</u>, 78 N.J. at 140).

In this case, the arbitration agreement extends broadly to "[a]ny dispute among the Members under this Agreement."[2] We are unpersuaded by plaintiff's argument that he did not agree to arbitrate his statutory claims. The phrase "[a]ny dispute" clearly and unmistakably includes all possible claims and causes of action including statutory claims. It is not necessary to list the specific statutory provisions or use any "magical language . . . to accomplish a waiver of rights in an arbitration agreement." <u>Morgan</u>, 225 N.J. at 309. Where, as here,

---

[2]  At oral argument before us, all parties confirmed the court correctly determined this case involves a "dispute among the Members" as defined under the Operating Agreement.

A-4004-24

parties to an arbitration agreement agree without limitation to arbitrate "[a]ny dispute," the agreement applies to all claims, including statutory claims.

Plaintiff's reliance on Garfinkel is unavailing. In that case, the Court determined an employee did not waive his right to assert a claim under the Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -42, by agreeing "'any controversy or claim' that arises from the [employment] agreement or its breach shall be settled by arbitration." 168 N.J. at 134.

Guided by "the policies that support the LAD and the rights it confers on aggrieved employees," the Court would "not assume that employees intend to waive those rights unless their agreements so provide in unambiguous terms." Id. at 135. Applying those principles, the Court held the "language [of the agreement] suggests that the parties intended to arbitrate only those disputes involving a contract term, a condition of employment, or some other element of the contract itself." Id. at 134.

Garfinkel is plainly distinguishable because this case does not involve an employment agreement or the important public policies underlying the LAD. More importantly, unlike in Garfinkel, plaintiff agreed to arbitrate "[a]ny dispute among the Members under this Agreement." As drafted, the phrase "under this Agreement" modifies the word "members," not the word "dispute."

12

That is, plaintiff agreed to arbitrate "[a]ny dispute among the Members" as defined "under this Agreement." The arbitration agreement is not, as plaintiff contends, limited to disputes involving a contract term or another element of the contract itself.

Plaintiff's claim that the arbitration agreement is ambiguous lacks merit. The arbitration agreement excludes disputes "otherwise provided below." Contrary to plaintiff's claim, the arbitration agreement expressly identifies the excluded claims. It states:

> Nothing contained herein shall be construed as to prevent any party from seeking provisional or equitable relief from a court on the basis that, unless such relief is obtained, any award that the arbitrator may make will be ineffectual, to seek injunctive relief from a court or seek enforcement of an arbitration order from a court.

As clearly set forth in section 10.18 of the Operating Agreement, if a party "seek[s] provisional or equitable relief from a court," that claim will not be subject to arbitration and, as expressly delineated in section 10.19, must be "brought in Ocean County." The court correctly determined the arbitration agreement is not ambiguous and plaintiff clearly and unmistakably agreed to arbitrate "[a]ny dispute" including disputes based on statutory claims.

A-4004-24

## III.

We are unpersuaded by plaintiff's claim that the arbitration agreement is unenforceable because it does not contain an express waiver of his right to pursue his statutory claims in court. In Atalese, our Supreme Court established heightened standards for proving assent to arbitration in some circumstances. Specifically, the Court invalidated an arbitration provision of a consumer contract of adhesion because it: (1) did not include an explanation the plaintiff was waiving her right to seek relief in court; (2) did not explain what arbitration is or how it differs from seeking judicial relief; and (3) lacked the plain language necessary to convey to the average consumer he or she was waiving the right to sue in court. 219 N.J. at 446.

The Court noted "an average member of the public may not know–without some explanatory comment–that arbitration is a substitute for the right to have one's claim adjudicated in a court of law." Id. at 442. Thus, in those circumstances, an arbitration clause "in some general and sufficiently broad way, must explain that the plaintiff is giving up [the] right to bring . . . claims in court or have a jury resolve the dispute." Id. at 447.

The Court later explained its holding in Atalese was driven by the nature of the underlying consumer contract:

A-4004-24

We were guided essentially by twin concerns. First, the Court was mindful that a consumer is not necessarily versed in the meaning of law-imbued terminology about procedures tucked into form contracts. The decision repeatedly notes that it is addressing a form consumer contract, not a contract individually negotiated in any way; accordingly, basic statutory consumer contract requirements about plain language implicitly provided the backdrop to the contract under review. And, second, the Court was mindful that plain language explanations of consequences had been required in contract cases in numerous other settings where a person would not be presumed to understand that what was being agreed to constituted a waiver of a constitutional or statutory right. . . . The consumer context of the contract mattered.

[Kernahan, 236 N.J. at 319-20 (citations omitted).]

The Court also has applied Atalese to employment contracts. See Flanzman v. Jenny Craig, Inc., 244 N.J. 119, 137-38 (2020).

In County of Passaic v. Horizon Healthcare Services, 474 N.J. Super. 498, 503-04 (App. Div. 2023), we explained our understanding of the applicability of Court's holding in Atalese as follows:

[Atalese's] concern for those not versed in the law or not necessarily aware of the fact that an agreement to arbitrate may preclude the right to sue in a court or invoke the inestimable right of trial by jury . . . vanishes when considering individually-negotiated contracts between sophisticated parties–often represented by counsel at the formation stage–possessing relatively similar bargaining power. Although our Supreme Court has not expressly declared it, and although we too

15

have not said as much in any published opinion, we are satisfied . . . that an express waiver of the right to seek relief in a court of law to the degree required by Atalese is unnecessary when parties to a commercial contract are sophisticated and possess comparatively equal bargaining power.

[(footnote omitted).]

See also In re Remicade (Direct Purchaser) Antitrust Litig., 938 F.3d 515, 525-26 (3d Cir. 2019) (holding Atalese does not apply where the parties have relatively equal bargaining power and levels of sophistication); GAR Disability Advocs., LLC v. Taylor, 365 F. Supp. 3d 522, 531 (D.N.J. 2019) (same).

We agree with the holding in Horizon and, therefore, reject plaintiff's claim that the standards set forth in Atalese apply here. Plaintiff negotiated and entered into the Operating Agreement in connection with a complex real estate venture in Indiana. The Operating Agreement undisputedly is not a consumer contract of adhesion. It was not presented on a take it or leave it basis, and plaintiff was under no compulsion, financial or otherwise, to sign it.

The parties also had relatively equal bargaining power. Indeed, plaintiff expressly "represent[ed] and warrant[ed] that [he] is a sophisticated investor with experience in making private investments" and "has such knowledge and experience in financial and business matters that [he] is capable of evaluating the merits and risks of" the project.

16

Under the circumstances of this case, the strict <u>Atalese</u> standard is inapplicable. It was, therefore, not necessary to include an express waiver of plaintiff's right to pursue his claims in court as a part of or in addition to the arbitration agreement.

Moreover, even if the <u>Atalese</u> standard applies, the Operating Agreement contains an express "waiver of trial by jury." Section 10.20 provides, "each of the parties hereto agrees that, in the event of any suit or legal action between or among the members arising in connection with this agreement, they shall waive their right . . . to seek a trial by jury." Again, contrary to plaintiff's contention, this waiver is not limited to claims based on the interpretation of the Operating Agreement. Rather, it extends to any "suit or legal action . . . arising in connection with" the Operating Agreement. Plaintiff's claims, including his statutory claims, "aris[e] in connection with" the Operating Agreement, and plaintiff expressly waived his right "to seek a trial by jury" in connection with those claims.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

17

A-4004-24