JOSEPH CAPELLA AND LEONARD D. FITTS, APPELLANTS, v. BOARD OF EDUCATION OF CAMDEN COUNTY VOCATIONAL AND TECHNICAL SCHOOL, CAMDEN COUNTY, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued October 6, 1976—Decided November 16, 1976.

Before Judges LYNCH, MILMED and ANTELL.

*Mr. Edward J. Butrym* argued the cause for appellants (*Messrs. Ruhlman and Butrym,* attorneys).

*Mr. William C. Davis* argued the cause for respondent (*Messrs. Hyland, Davis & Reberkenny,* attorneys).

A statement in lieu of brief was submitted by Mr. Robert J. Del Tufo, Acting Attorney General, attorney for respondent State Board of Education (*Ms. Erminie L. Conley,* Deputy Attorney General, of counsel; *Ms. Jane Sommer,* Deputy Attorney General, on the brief).

The opinion of the court was delivered by

LYNCH, P. J. A. D. The issue presented in this case is whether appellant guidance counsellors, employed for more than three academic years in an adult evening high school, working three hours a night for two evenings a week, may become tenured in such positions pursuant to *N. J. S. A.* 18A:28-5. Appellants are already tenured in their full-time employment in other school districts.

Appellant Fitts began his evening school job with respondent Board of Education of the Camden County Vocation School (board) on October 16, 1968, and appellant

Capella began on October 21, 1968. Thereafter they served on the two evenings a week basis throughout the intervening school years until their services were terminated on June 26, 1973. They thereupon filed a petition with the Commissioner of Education seeking an order declaring that they were tenured in their positions with the board and directing their reinstatement in those positions.

The hearing examiner assigned to hear the petitions found that petitioners had met the statutory requirements for tenure in their positions with the board but left to the Commissioner the determination as to whether petitioners, being tenured in other full-time public school positions, may also possess a tenured status in their part-time positions as guidance counsellors for the board.

The Commissioner, noting that accredited adult evening high schools must necessarily be operated on a more flexible basis than are regular public high schools and that to confer tenure on part-time instructors would impede that flexibility, concluded that the "over-protection petitioners seek would be a disservice to the schools * * * and is not intended by the school laws." The State Board of Education affirmed for the reasons expressed by the Commissioner in his decision.

We respect the Commissioner's expertise in this area and accept his finding of the impracticability of tenure being conferred on part-time employees in an adult evening high school. We affirm his decision. But we do so because we also conclude that analysis of the pertinent sections of the Education Law, *N. J. S. A.* 18A:1–1 *et seq.,* read *in pari materia,* evinces a legislative intent not to confer tenure in the part-time positions here involved.

It is true that the tenure statute (*N. J. S. A.* 18A:28–5) provides that "all" teaching staff members, occupying a position which requires possession of an appropriate certificate, employed for three consecutive academic years, and re-employed at the beginning of the fourth succeeding academic year, are entitled to tenure. Since, appellants say, they have

the necessary certificate and have been employed for the stated period of time, they literally come within the terms of the statute. But the use of the word "all" prefixed to teaching staff members does not literally mean all persons who teach. Thus it was held by our former highest court that the phrase "all teachers" then in the tenure statute did not include a substitute teacher who had the appropriate certificate, even though she was employed for more than three academic years with re-employment in the next succeeding such year. *Schulz v. State Bd. of Ed.*, 132 *N. J. L.* 345 (E. & A. 1944). The court there said:

There was nothing new in the use of the word "all" viz., "all teachers", in the 1940 amendment; that terminology had been in the statute from the very beginning, ch. 243, *P. L.* 1909, and the amendment merely preserved, in that respect, the structure of the statute as it had always been. That the legislative mind was not a stranger to the distinction between teachers and substitute teachers is shown by the precise language in the 1919 amendment (ch. 80, *P. L.* 1919) incorporating the pension fund feature in the general public school statute of 1903 (ch. 1, *P. L., Special Session*): "No person shall be deemed a teacher within the meaning of this article who is a substitute teacher * * *" (*R. S.* 18:13–25). We find significance in the legislative recognition, in any respect, of "substitute teachers" as a class distinct from "teachers" and particularly in a respect which carries in favor of teachers a benefit or a protection which is denied to substitute teachers. The pension fund legislation and the tenure act (ch. 243, *P. L.* 1909) were not isolated statutes; they were both enacted as integral parts of the same school law and therefore may be said to be *in pari materia*. So, also, ch. 142, *P. L.* 1942, incorporated within chapter 13 (re teachers) of title 18, Revised Statutes, which grants certain sick leave and the retained benefit of minimum unused sick leave absences to teachers "who are steadily employed by the board of education on a yearly appointment or who are protected in their positions under the provisions of sections 18:13–16 to 18:13–19 of the Revised Statutes" appears to exclude substitute teachers serving on a daily or monthly basis. And it will hardly be argued that *R. S.* 18:13–118, which provides for compulsory permission to a teacher to be absent at the annual teachers' convention on full pay, or *R. S.* 18:13–1, providing for the selection of representative teachers on the State Board of Examiners, applies to the classification just mentioned. A related instance of legislative intent not to give tenure universally upon mere time of service without regard for attendant circumstances is to be found in the provision (ch. 226,

*P. L.* 1944, 18:4A-1 et seq.) that the employment of persons temporarily filling the positions of teachers absent on war service shall immediately cease when the incumbent shall return. [at 351-352]

While the *Schulz* court found that the Pension Fund Act's express exclusion of substitute teachers indicated a legislative intent to exclude them from tenure protection, we note that the current act also provides that no person shall be deemed a "teacher" within the meaning thereof who "is a teacher not regularly engaged in performing one or more of [teaching or administrative functions] as a *full-time* occupation outside of vacation periods." *N. J. S. A.* 18A:66-2(p) (emphasis added). Clearly, appellants are not engaged in a "full-time" occupation when they work for three hours on two nights a week. As in *Schulz,* the indication here is that appellants were not such teachers or members of the professional staff as are entitled to tenure.

*Schulz* also distinguished the status of persons employed in regular teaching positions who are entitled to tenure from the status of substitutes not so entitled on the basis of "seniority, compensated absences, with the rate and unit of compensation, and with the schedules of increases." 132 *N. J. L.* at 347. The same differentials also distinguish appellants from regular teachers who are entitled to tenure.

In *Biancardi v. Waldwick Bd. of Ed.,* 139 *N. J. Super.* 175 (App. Div. 1976), this court, in a 2 to 1 decision, adhered to the holding of *Schulz v. State Bd. of Ed., supra,* 132 *N. J. L.* 345, and again ruled that time served as a substitute teacher could not be counted toward tenure. In addition to the factors found to be significant in *Schulz,* we also noted the fact that the teacher there involved was not paid at the rate of pay established by the salary guide for a regular teacher but rather at a daily rate and that distinction was an indication that her time spent was not of such regular character as to count toward tenure. (We note that the hearing examiner, who found appellants entitled to tenure under the statute cited the Commissioner's deci-

sion in *Biancardi* in support thereof. Our decision in that case reversed the Commissioner's decision.)

The tenure law has been narrowly construed to protect only those positions expressly mentioned therein, *Moresh v. Bayonne Bd. of Ed.*, 52 *N. J. Super.* 105, 111 (App. Div. 1958). An analysis of the school laws indicate that tenure was to attach only in those school programs which are *required* to be provided by a school system, and not to such optional programs as an adult evening high school which a board of education "may" maintain. *N. J. S. A.* 18A:50–1. Thus *N. J. S. A.* 18A:28–6.1, which provides for the protection of tenured persons in schools which have been discontinued and specifically lists the school programs in which tenured personnel were expected to be present, does not list teachers at evening adult high schools. It enumerates only "high school, junior high school, elementary school or any one or more of the grades from kindergarten through grade 12." Likewise, *N. J. S. A.* 18A:28–9, which provides for the protection of tenured personnel in the event of a reduction in work force, necessarily refers only to reductions resulting for reasons of economy, reductions of enrollment or organization in *required* school programs. Such a provision would have been unnecessary and meaningless if the tenure laws had been intended to protect teaching staff in optional programs, offered by a district at its discretion and subject to elimination at any time, such as the evening high school here involved.

Other instances of optional programs which a board may, or may not, maintain at its discretion are: evening schools for foreign born residents (*N. J. S. A.* 18A:49–1 *et seq.*), lectures for working people (*N. J. S. A.* 18A:52–1 *et seq.*), museum facilities (*N. J. S. A.* 18A:53–1 *et seq.*), and high school equivalency programs (*N. J. S. A.* 18A:50–12 *et seq.*). The tenuous nature of such programs dictates a need for flexibility in their operation. Adult evening school programs require this same flexibility. They are offered at the discretion of a school district. Attendance of the stu-

dents is not required. And, as the Commissioner noted herein:

> \* \* \* accredited adult evening high schools are necessarily operated on a more flexible basis than are public high schools. This flexibility is mandated by such factors as changing interests of the enrolled adults, varying financial capability of the school districts, changes in total enrollments, fluctuating job opportunities, the availability of qualified instructors, and cyclical changes in the nation's economy. Frequently, those who teach in such accredited evening high schools are also employed in the day school programs of the same school district or other school districts.
>
> An accredited adult evening school must not be bound by such inflexibility as would be created were tenure to be conferred upon its part-time instructors, if it is to operate efficiently. Such a situation would create a plethora of scheduling problems and rigid priorities of assignments, critically hamper appropriate staff utilization, and hinder adaptability to changing problems \* \* \*.

As we have noted, appellants hold tenure in full-time school positions in other districts. We conclude that the school laws cannot be construed so as to confer tenure in these part-time positions. We agree that to do so would result, as the Commissioner said, in "over-protection" which was not within the legislative intent.

The decision of the State Board of Education is affirmed.