RITA SPIEWAK, PEGGY DABINETT, PATRICIA O'REILLY AND THE RUTHERFORD EDUCATION ASSOCIATION, RESPONDENTS, v. BOARD OF EDUCATION OF RUTHERFORD, APPELLANT.

HAMILTON TOWNSHIP SUPPLEMENTAL TEACHERS ASSOCIATION, ARLENE BARTOLOMEI, EDITH BLOOMER, JOYCE BRUGNOLI, SUE COLBERT, LORRAINE B. CORYELL, CAROLYN FORNEY, GAIL FOUSE, BARBARA GORDON, BONNIE GROCOTT, JOANNA HULSEY, ROSEMARY KESSLER, VEARIAN S. KROECK, BARBARA KYRITSIS, GRACE LOYACK, AMY G. MALICK, FRANCES A. MANDL, RITA MILLNER, KATHY MOORE, PEG MOORE, ROSEMARY NAPLES, DIANE NIES, ELAINE POLIZZI, GAIL SHUMAN, ROSEANN SZILVASI, AND CHERYL VECCHIOLLA, RESPONDENTS, v. HAMILTON TOWNSHIP BOARD OF EDUCATION, APPELLANT.

CONSTANCE ANDERSON, APPELLANT, v. SUMMIT BOARD OF EDUCATION, RESPONDENT.

Argued March 23, 1982—Decided June 23, 1982.

64

*Alfred E. Ramey, Jr.,* Deputy Attorney General, argued the cause for appellant and respondent State Board of Education (*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney; *Erminie L. Conley,* former Assistant Attorney General, of counsel; *Alfred E. Ramey, Jr.,* and *Mary Ann Burgess,* Assistant Attorney General, on the briefs).

*H. Ronald Levine* argued the cause for appellant Board of Education of Rutherford (*Irving C. Evers,* attorney; *Irving C. Evers,* on the brief).

*Henry F. Gill* argued the cause for appellant Hamilton Township Board of Education.

*Gilbert E. Owren* argued the cause for appellant Constance Anderson (*Drummond & Owren,* attorneys).

*Steven B. Hoskins* argued the cause for respondent Summit Board of Education (*McCarter & English,* attorneys; *Gerald C. Harvey* and *Hinda B. Simon,* on the briefs).

*Arnold M. Mellk* argued the cause for respondents Hamilton Township Supplemental Teachers Association, et al. (*Katzenbach, Gildea & Rudner,* attorneys; *James F. Schwerin,* on the brief).

*Louis P. Bucceri* argued the cause for respondents Rita Spiewak, et al. (*Bucceri & Pincus,* attorneys).

*Susan Galante,* Assistant Counsel, argued the cause on behalf of amicus curiae New Jersey School Boards Association (*David W. Carroll,* General Counsel, attorney).

The opinion of the Court was delivered by

PASHMAN, J.

■ Today we decide whether public school teachers who provide remedial and supplemental instruction to educationally handicapped children may acquire tenure. This question requires us to interpret and apply the tenure statute, *N.J.S.A.* 18A:28–5. The Court also considers a recent Appellate Division decision, *Point Pleasant Beach Teachers' Ass'n v. Callam,* 173 *N.J.Super.* 11, certif. den. 84 *N.J.* 469 (1980), which has been subject to contradictory interpretations in the state agencies and courts below. We overrule *Point Pleasant* and hold that remedial and supplemental instructors acquire tenure if they meet the qualifications in the statute.

## I

## FACTS AND PROCEDURAL HISTORY

A. *Spiewak v. Rutherford Board of Education*

Rita Spiewak has worked for the Rutherford Board of Education since 1971 as a "Beadleston" supplemental instructor.[1] She holds an appropriate teaching certificate issued by the State Board of Examiners, as required by *N.J.S.A.* 18A:26–2. Spiewak provides special educational assistance on a tutorial basis to students with learning disabilities. These children are identified by a professionally staffed child study team that produces a "prescription" for appropriate academic assistance suited to each student's individual needs. *N.J.S.A.* 18A:46–3.

Spiewak has been employed by the Rutherford Board of Education for each academic year since 1971. Her teaching duties typically have started two or three days after opening day in September and ended two or three days before the official close of the school year in June. When Spiewak was first hired in 1971, she taught for three hours each day. Her employment expanded to between four and five hours in her second year and to six hours by 1975. She was not assigned certain ancillary duties required of most regular teachers, such as homeroom, hall duty or playground supervision. These responsibilities were not required of a number of tenurable teaching staff positions, such as teachers of art, music and physical education, as well as guidance counselors and school psychologists.

Except for the 1973–1974 academic year when she received an annual contract, Spiewak has been paid by the hour. She receives no pay for a scheduled instruction period if a student is absent or fails to appear, and no pay whenever school is unex-

---

[1] Beadleston supplemental instructors are public school teachers who staff a supplemental academic program for educationally handicapped children. These programs are mandated by legislation initially sponsored by State Senator Beadleston. *See N.J.S.A.* 18A:46–1 to –46.

pectedly closed. Until 1976, she was not compensated for any time devoted to lesson preparation, record keeping or report making. She has never received sick leave, personal days, health insurance, holiday pay, vacations or pension benefits. Her rate of pay is significantly lower than the effective hourly rate received by contract teachers paid in accord with the salary guide.

Peggy Dabinett began work as a supplemental teacher at Rutherford in the spring of 1969. She has been employed by the board regularly and without interruption since then. Like Spiewak, she holds a state-issued teaching certificate appropriate to her position. Her teaching duties, method of instruction and workload are identical to Spiewak's, as are her compensation and terms of employment.

The board has retained two other supplemental instructors under contract. They are not parties to this case. They are eligible for tenure and the higher pay scale required by the contract. Their duties are not materially different from those of Spiewak and Dabinett. The Superintendent of Schools admitted that the school board employs some supplemental teachers on an hourly basis rather than a contract basis solely for economic reasons.

Patricia O'Reilly has been employed by the Rutherford Board as a remedial reading teacher since 1973. The board compensates her with federal funds received for that purpose under Title I of the Elementary and Secondary Education Act, 20 U.S.C.A. § 236 to § 241–1 (Title I). Like Spiewak and Dabinett, O'Reilly holds a state-issued certificate appropriate to her position. Her duties are similar to those of Spiewak and Dabinett. Since 1974 she has provided 25 hours of instruction per week. Her schedule requires her to be present in school from 8:30 a. m. until 3:00 p. m., the entire period for which students are in attendance. She works the full academic year. Her compensation and other terms of employment are identical to those of Spiewak and Dabinett, except that she receives Blue Cross/Blue Shield benefits.

Spiewak, Dabinett and O'Reilly filed a petition with the Commissioner of Education pursuant to *N.J.S.A.* 18A:6–9 on January 7, 1977. They sought a declaration of their employment status and tenure eligibility, as well as prorated salary and benefits. The Administrative Law Judge issued an initial decision on October 26, 1979. He held that petitioners were teaching staff members entitled to tenure under *N.J.S.A.* 18A:28–5. He further found that these teachers were entitled only to the salary and emoluments offered by the board and accepted by them, with the exception of sick leave, which was statutorily mandated for all steadily employed persons by *N.J.S.A.* 18A:30–2.

The Commissioner of Education rendered his decision on December 18, 1979. Although he generally accepted the findings of the Administrative Law Judge, the Commissioner concluded that the petitioners were not only eligible to attain tenure but also entitled to all the emoluments and benefits afforded other teaching staff members employed by the board although on a prorated basis. He noted that sick leave cannot under law be prorated.

The school board appealed to the State Board of Education. While that appeal was pending, the Appellate Division decided *Point Pleasant Beach Teachers' Ass'n v. Callam*, 173 *N.J.Super.* 11, certif. den., 84 *N.J.* 469 (1980). In that case, the Appellate Division upheld a board of education's refusal to grant tenure to teachers who staffed the district's remedial reading program. That program was funded by Title I, 20 *U.S.C.A.* §§ 236 to 241–1. The court held that the teachers in that case could not be considered "teaching staff members" within the meaning of *N.J.S.A.* 18A:1–1 and 18A:28–5 since they had been hired on a temporary basis.

Following the decision in *Point Pleasant*, the State Board of Education reversed the Commissioner's decision in *Spiewak* on July 2, 1980. The State Board based its reversal on *Point Pleasant.* However, the State Board did not explain why it concluded that *Point Pleasant* mandated such a result.

On appeal, the Appellate Division reversed the State Board of Education and reinstated the Commissioner's determination. 180 *N.J.Super.* 312 (1981). The court found that the teachers' employment qualified them as "teaching staff members" presumptively eligible for tenure under *N.J.S.A.* 18A:28–5. The court interpreted *Point Pleasant* to hold that

> where employment is offered and accepted on a temporary basis and where its temporary nature is understood by both employer and employee to be one of its essential predicates, such employment cannot then be relied on by the employee as the basis of tenure. [180 *N.J.Super.* at 318]

The court found that the source of funding for the teachers' salary had no independent significance but was merely indicative of the intent of the parties on the nature of the employment. *Id.* Applying that test, the Appellate Division found that although the parties may initially have understood their employment to be temporary, it had in fact become regular and continuous. The court remanded the case to the Commissioner to determine when tenure accrued and what retroactive benefits were owed to petitioners.

This Court granted the State Board of Education's petition for certification on November 10, 1981, 88 *N.J.* 502 (1981).

B. *Hamilton Tp. Supplemental Teachers Ass'n v. Hamilton Tp. Board of Education*

Petitioners here are twenty-six Beadleston supplemental instructors employed by the Hamilton Township Board of Education. They all hold the required state-issued teaching certificates. Their duties are identical to those performed by Spiewak and Dabinett. Their compensation and terms of employment differ from Spiewak's and Dabinett's in the single respect that they receive ten paid sick days per year.

On September 24, 1979, an Administrative Law Judge found that petitioners were regularly employed teachers in programs required by State statute and the State Constitution. He further found that they fell within the statutory definition of "teaching staff member," *N.J.S.A.* 18A:1–1. Based on these

findings, the judge concluded that any petitioner who had served the requisite length of time had acquired tenure under *N.J.S.A.* 18A:28–5.

The Commissioner of Education affirmed the Administrative Law Judge's initial decision on November 30, 1979. As in *Spiewak*, the State Board of Education reversed on October 3, 1980 on the basis of *Point Pleasant.*

The Appellate Division reversed and held that petitioners were eligible for tenure. 180 *N.J.Super.* 321 (1981). The court found the *Hamilton Tp.* situation indistinguishable from *Point Pleasant* with one exception, which it found to be dispositive. The court concluded that the *Hamilton Tp.* teachers, unlike those in *Point Pleasant*, were not employed in a federally funded program. Since they were not employed in programs contingent on uncertain federal funding, they were therefore entitled to tenure under *N.J.S.A.* 18A:28–5. The court suggested that Title I teachers could not receive tenure under *N.J.S.A.* 18A:28–5 because of the tenuous nature of their federal funding. This conclusion contradicts the assertion of the Appellate Division in *Spiewak* that Title I teachers are eligible for tenure under some circumstances. *See* 180 *N.J.Super.* at 318.

This Court granted the State Board of Education's petition for certification on November 10, 1981, 88 *N.J.* 503 (1981).

## C. *Anderson v. Summit Board of Education*

Constance Anderson worked as a teacher in the Summit public school system from February 1976 through June 1979. When the Summit Board of Education then failed to renew her contract, Anderson contested that decision. She claimed that she had already qualified for tenure by working the statutorily required period of more than three years within a span of four consecutive academic years. *N.J.S.A.* 18A:28–5. The school board contended that Anderson's initial four months on the job as a federally funded Title I remedial reading instructor did not count toward her tenure, leaving her just short of tenure when

it terminated her employment. The sole issue in this case is whether Anderson should receive tenure credit for the time spent as a remedial reading instructor in a federally funded program under Title I.

On February 29, 1980, the Administrative Law Judge found that Anderson's employment as a remedial reading instructor in the federally funded Title I program counted toward determining her tenure eligibility. Thus, the judge concluded that the board had improperly terminated her. The judge ordered the board to reinstate Anderson to her teaching position.

The Commissioner of Education adopted the Administrative Law Judge's findings on April 30, 1980. The Commissioner ordered Anderson's reinstatement. He further ordered reimbursement of full salary and benefits from the time of the improper termination, mitigated by the amount Anderson had earned from other employment during that time.

On appeal, the State Board of Education reversed on the authority of *Point Pleasant.* The State Board held on December 3, 1980 that Anderson's service as a remedial instructor did not count towards tenure.

Anderson filed a notice of appeal with the Appellate Division on February 20, 1981. This Court granted direct certification on February 2, 1982. 89 *N.J.* 405 (1982).

## II

State statutes grant teachers in New Jersey the right to tenure. *Zimmerman v. Newark Board of Education,* 38 *N.J.* 65, 70–72 (1962), certif. den. 371 *U.S.* 956, 83 *S.Ct.* 508, 9 *L.Ed.2d* 502 (1963); *Ahrensfield v. State Board of Education,* 126 *N.J.L.* 543 (E. & A. 1941). The Tenure Act, *N.J.S.A.* 18A:28–1 to –18, specifically defines the conditions under which teachers are entitled to the security of tenure. The statute makes tenure a mandatory term and condition of employment. It therefore supersedes contractual terms. *In the Matter of Local 195, IFPTE, AFL–CIO v. State,* 88 *N.J.* 393, 403–04 (1982);

*State v. State Supervisory Employees Ass'n,* 78 *N.J.* 54, 82 n.7 (1978); *Red Bank Regional Ed. Ass'n v. Red Bank Reg. High Sch. Bd. of Ed.,* 78 *N.J.* 122, 141 (1978); *Zimmerman v. Newark Bd. of Ed.,* 38 *N.J.* at 70–72. The question of whether remedial teachers are entitled to tenure must be answered by interpretation of the relevant statutes.

The Tenure Act was originally enacted in 1909. *L.* 1909, *c.* 243. Since then, it has undergone numerous amendments. However, its purpose has not changed. The tenure statute prevents school boards from abusing their superior bargaining power over teachers in contract negotiations, *Trenton Bd. of Ed. v. State Bd. of Ed.,* 125 *N.J.L.* 611, 614 (S.Ct.1941). It protects teachers from dismissal for "unfounded, flimsy or political reasons." *Zimmerman v. Newark Bd. of Ed.,* 38 *N.J.* at 71.

This case concerns *N.J.S.A.* 18A:28–5, which provides in part:

The services of all teaching staff members including all teachers, principals, assistant principals, vice principals, superintendents, assistant superintendents, and all school nurses including school nurse supervisors, head school nurses, chief school nurses, school nurse coordinators, and any other nurse performing school nursing services and such other employees as are in positions which require them to hold appropriate certificates issued by the board of examiners, serving in any school district or under any board of education, excepting those who are not the holders of proper certificates in full force and effect, shall be under tenure during good behavior and efficiency and they shall not be dismissed or reduced in compensation except for inefficiency, incapacity, or conduct unbecoming such a teaching staff member or other just cause and then only in the manner prescribed by subarticle B of article 2 of chapter 6 of this title, after employment in such district or by such board for:

(a) three consecutive calendar years, or any shorter period which may be fixed by the employing board for such purpose;. or

(b) three consecutive academic years, together with employment at the beginning of the next succeeding academic year; or

(c) the equivalent of more than three academic years within a period of any four consecutive academic years. . . .

"Teaching staff member" is defined at *N.J.S.A.* 18A:1–1:

"Teaching staff member" means a member of the professional staff of any district or regional board of education, or any board of education of a county vocational school, holding office, position or employment of such character that the qualifications, for such office, position or employment, require him to hold a valid and effective standard, provisional or emergency certificate, appropriate to

his office, position or employment, issued by the state board of examiners and includes a school nurse.

By the express terms of these statutes, an employee of a board of education is entitled to tenure if (1) she works in a position for which a teaching certificate is required; (2) she holds the appropriate certificate; and (3) she has served the requisite period of time.

There is no question that the teachers in this case fall within the express terms of the statute. They are therefore presumptively eligible for tenure unless a statutory exception applies. The only statutory exception possibly relevant here is *N.J.S.A.* 18A:16–1.1. That statute denies tenure rights to substitute teachers. It provides that

... [a] board of education may designate some person to act in place of any officer or employee during the absence, disability or disqualification of any such officer or employee ... [However,] no person so acting shall acquire tenure in the office or employment in which he acts pursuant to this section when so acting. [*N.J.S.A.* 18A:16–1.1]

Although this statute denies tenure to temporary employees, it extends only to those who "act in place of" another employee who is absent or disabled. None of the teachers in this case was a temporary replacement as defined by the statute.

Since the wording of *N.J.S.A.* 18A:28–5 is clear and unambiguous, we will apply it as written in the absence of any evidence of a contrary legislative intent. As Justice Clifford stated in construing a different portion of the Tenure Act:

Fundamental principles of statutory construction require that "[i]f the [statutory] language is plain, unambiguous and uncontrolled by other parts of the act or other acts upon the same subject the court cannot give it a different meaning." [Citation omitted.] ...

\* \* \* \* \* \* \* \*

Our duty is to construe and apply the statute as enacted. We are not at liberty to presume the legislature intended something other than what it expressed by its plain language. This Court will not engage in conjecture or surmise which will circumvent the plain meaning of the act. [*In re Jamesburg High School Closing*, 83 *N.J.* 540 (1980)]

Moreover, because of its remedial purpose, the Tenure Act should be liberally construed to achieve its beneficent ends.

*Barnes v. Jersey City Bd. of Ed.*, 85 *N.J.Super.* 42, 45 (App.Div.1964). *Accord, Manchester Bd. of Ed. v. Raubinger*, 78 *N.J.Super.* 90, 101 (App.Div.1963); *Viemeister v. Prospect Bd. of Ed.*, 5 *N.J.Super.* 215, 218 (App.Div.1949). *Cf. Capella v. Bd. of Ed. of Camden County Voc. Tech. Sch.*, 145 *N.J.Super.* 209, 214 (App.Div.1976).

We find no evidence of legislative intent to exclude remedial and supplemental teachers from the express language of *N.J. S.A.* 18A:28–5, and therefore conclude that they are eligible for tenure.

We find further support for this conclusion in the statutes which mandate that remedial and supplemental services be provided to children who need them. The Public School Education Act of 1975, *N.J.S.A.* 18A:7A–1 to –33, enacted in response to this Court's ruling in *Robinson v. Cahill*, 69 *N.J.* 133 (1975), specifically requires public schools to provide "[p]rograms and supportive services for all pupils especially those who are educationally disadvantaged or who have special educational needs." *N.J.S.A.* 18A:7A–5(e). *See also N.J.S.A.* 18A:7A–6; *N.J.A.C.* 6:8–2.1; 6:28–3.2. We agree with the Appellate Division in *Spiewak* which stated:

> We deem it beyond cavil that elementary school children unable to read at grade level are included within this mandate and that remedial programs for such children are encompassed by this legislative directive. Certainly the programs prescribed by *N.J.S.A.* 18A:46–1 *et seq.* are also generally encompassed within the definitional scope of this directive. [180 *N.J.Super.* at 319]

We have previously alluded to the strong legislative policy of providing adequate remedial education to students with special needs. *See e.g., Levine v. Institutions & Agencies Dept. of N. J.*, 84 *N.J.* 234, 249–50 (1980). Such programs are a permanent part of New Jersey's system of "thorough and efficient education." *N.J.S.A.* 18A:7A–2.

As noted earlier, the State Board of Education has relied on *Point Pleasant* to deny tenure to remedial teachers in these cases. The various boards of education here rely almost exclusively on *Point Pleasant* for their position that supplemental teachers may not acquire tenure. We therefore consider the reasoning and the holding in that case.

### III

In *Point Pleasant* the Appellate Division held that certain Title I teachers were not "teaching staff members" as defined by *N.J.S.A.* 18A:1–1 and therefore not eligible for tenure under *N.J.S.A.* 18A:28–5. The court acknowledged that the teachers in that case "fall within the literal terms of *N.J.S.A.* 18A:1–1 and 18A:28–5, and therefore could be considered eligible for tenure." 173 *N.J.Super.* at 16. Nonetheless, the court concluded that teachers were unprotected by the statute if they had been offered and had accepted "temporary employment." *Id.* at 17, 18. The court held:

> Whether a professional employee of a board of education qualifies as a teaching staff member eligible for tenure depends upon *the nature of the employment tendered and accepted.* This determination can only be made after an examination of *the terms, conditions and duties of the employment and a consideration of the conduct of the parties.* [*Id.* at 17 (emphasis added)]

Analyzing the conduct of the parties, the court concluded that the teachers in that case had entered into contractual relationships with the board of education that were intended by the board and understood by the teachers to be temporary. They were thus not entitled to tenure.

The decision in *Point Pleasant* relies on the wrong legal principles. By focusing on the contractual relations between the parties and not the statutory criteria for tenure, the court in *Point Pleasant* overlooked the authority which holds that tenure is a legal right governed by statute rather than contract.

It is now well settled that public employees and employers may not agree to contractual terms that contravene a specific term or condition of employment set by a statute. "If the Legislature establishes a specific term or condition of employment that leaves no room for discretionary action, then negotiation on that term is fully preempted." *In re IFPTE Local 195 v. State*, 88 *N.J.* at 403. We have specifically stated that the tenure provisions of *N.J.S.A.* 18A:28–5 constitute a mandatory contractual term that may not be waived or bargained away.

> Mandatory or imperative statutes ordinarily are those enactments which set up a particular scheme which "shall" be handled as directed. An example of such a statute is *N.J.S.A.* 18A:28–5(b), which provides that teachers "shall be under tenure during good behavior and efficiency and they shall not be dismissed * * * after employment in such district or by such board for * * * three consecutive academic years, together with employment at the beginning of the next succeeding academic year," except for specifically enumerated reasons. [*State v. State Supervisory Employees Ass'n*, 78 *N.J.* at 82 n.7]

Whether certain teachers are entitled to tenure never depends on the contractual agreement between the teachers and the board of education. Tenure is a "statutory right imposed upon a teacher's contractual employment," *Zimmerman v. Newark Bd. of Ed.*, 38 *N.J.* at 72. It may not be forfeited or waived, *Red Bank Ed. Ass'n v. Red Bank Bd. of Ed.*, 78 *N.J.* at 141.

The "temporary employment" exception to *N.J.S.A.* 18A:28–5 created by the court in *Point Pleasant* not only erroneously focuses on the subjective intent of the parties rather than the objective statutory criteria, but it contradicts an express statutory provision. As noted above, the tenure statute itself contains an exception for "temporary employees." *N.J.S.A.* 18A:16–1.1. However, that exception is limited to employees hired to take the place of an absent teacher. The courts are not free to expand that exception by judicial fiat.

The cases relied upon by the court in *Point Pleasant* do not support its creation of a new exception to the tenure statute. *Schulz v. State Bd. of Ed.*, 132 *N.J.L.* 345 (E. & A. 1945); *Biancardi v. Waldwick Bd. of Ed.*, 139 *N.J.Super.* 175 (App.Div. 1976), aff'd o. b., 73 *N.J.* 37 (1977); *Capella v. Camden Cty. Voc. Tech. Sch. Bd. of Ed.*, 145 *N.J.Super.* 209 (App.Div.1976). None of these decisions justifies the departure in *Point Pleasant.*

In *Schulz v. State Board of Education*, the Court of Errors and Appeals held that the tenure statute did not apply to substitute teachers. At the time *Schulz* was decided, the predecessor statute to *N.J.S.A.* 18A:28–5, *R.S.* 18:13–16, provided that "all teachers" were eligible for tenure. The tenure statute nowhere defined the phrase "all teachers." Confronted with that ambiguous term, the court looked to other statutes dealing

with teachers' conditions of employment. The pension law, *R.S.*
18:13–25 [now *N.J.S.A.* 18A:66–2(p) ], provided that "[n]o person
shall be deemed a teacher within the meaning of this article who
is a substitute teacher. . . ." In the absence of any other
indication of legislative intent regarding the types of "teachers"
eligible for tenure under the tenure statute, the court relied on
the pension statute as well as related statutory provisions to
conclude that substitute teachers were ineligible for tenure. *Id.*
at 351–52.

*Schulz* does not stand for the proposition that courts may
create exceptions to the clear terms of the tenure statute. At
the time the case was decided, the statute did not define which
"teachers" were eligible for tenure. It was reasonable for the
Court to look to related statutes to determine the legislative
intent. Since the *Schulz* decision in 1945, the Legislature has
amended the Tenure Act specifically to define which teachers
are covered by it. *N.J.S.A.* 18A:28–5 grants tenure to all
"teaching staff members" who meet the conditions of the stat-
ute. That version of the statute was not in effect at the time
*Schulz* was decided. Moreover, in 1967 the Legislature adopted
the statutory provision that defines "teaching staff members,"
*N.J.S.A.* 18A:1–1, *L.* 1967, *c.* 31. There is therefore no longer
any need to look outside the Tenure Act to discover which
teachers the Legislature intended to be protected by it.

The court in *Point Pleasant* mistakenly assumed that *Schulz*
interpreted the same statute that the *Point Pleasant* court had
before it. But that statute had been materially altered after
*Schulz* was decided. A case that construes and applies a statute
does not necessarily express the correct law once the Legislature
has changed that statute. This is common sense. To decide
whether or not a teacher is protected by tenure, we must
construe the current statutory provisions.

Reliance on *Biancardi v. Waldwick Board of Education, supra,*
is also misplaced. Citing *Schulz* for the proposition that substi-
tute teachers were ineligible for tenure, 139 *N.J.Super.* at 177,

the *Biancardi* Court erroneously stated that *Schulz* "is binding upon us until overruled by competent authority." *Id.* At the time *Biancardi* was decided in 1976, the tenure statute construed in *Schulz* had been materially amended. The new definition of "teaching staff members" had been added in 1967. Moreover, the Legislature had enacted a specific statute that denied tenure to substitute teachers. *N.J.S.A.* 18A:16–1.1. Thus, by reaffirming the *Schulz* substitute teacher exception, *Biancardi* in effect did no more than restate the express legislative exclusion of substitutes from tenure eligibility.

Finally, in *Capella v. Camden Cty. Voc. Tech. Sch. Bd. of Ed.*, the Appellate Division held that teachers in an adult evening school program were ineligible for tenure. That court again incorrectly relied on *Schulz.* 145 *N.J.Super.* at 212–13. At the time *Capella* was decided, the statute construed in *Schulz* was no longer in existence. However, the *Capella* court did act correctly in examining the various tenure provisions in the current statute to determine whether the Legislature intended to grant tenure to teachers in adult evening school programs. Referring to related provisions of the Tenure Act, the court concluded that those teachers were not within its protection. *Id.* at 211, 214. *See N.J.S.A.* 18A:28–6.1.

The *Point Pleasant* court also relied on *Capella* for the proposition that an employee is not entitled to tenure if the program in which she is employed "requires a flexibility in operation which would be impeded if its instructors were granted tenure." 173 *N.J.Super.* at 18. *See Capella v. Camden Cty. Voc. Tech. Sch. Bd. of Ed.*, 145 *N.J.Super.* at 214–15. This is incorrect for several reasons. First, the Legislature has determined that the utility of tenure to improving education outweighs any costs in decreased "flexibility." That is a policy determination that has been made by the Legislature. It is not proper for courts to override that determination on the basis of their independent policy conclusions. Second, the tenure statute in no way deprives a school board of flexibility. A board can deny tenure to a teacher simply by dismissing her before she has completed the

required years of service. Finally, the Legislature has expressly provided that tenured teachers may be dismissed if the board deems it advisable to reduce the number of teaching positions for economic reasons or because of reduction in the number of pupils or other good cause. *N.J.S.A.* 18A:28–9. *In re Maywood Bd. of Ed.*, 168 *N.J.Super.* 45, 51–52 (App.Div.1979).

To summarize, neither *Schulz* nor *Biancardi* nor *Capella* holds that courts may themselves define exceptions to *N.J.S.A.* 18A:28–5. To the extent those decisions imply that the right to tenure derives from contract rather than statute, they are wrong. To the extent they suggest that courts may create exceptions to the clear language of *N.J.S.A.* 18A:28–5 based on policy considerations, they are disapproved.

As a practical matter, the protection of tenure would be greatly reduced if it were subject to contract principles. If tenure were subject to contract, it would be available to teachers only if school boards agreed to grant it to them. But the Legislature has explicitly mandated that teachers be granted tenure under certain conditions as a means to improve public education. Neither school boards nor teachers are free to disobey that mandate. Tenure is not dependent on agreement between the parties. Teachers are entitled to tenure because the Legislature has granted them that right.

The unfairness of making tenure subject to contract negotiations is apparent from these cases. In *Spiewak*, for example, the school board has hired two supplemental teachers on a contract and tenurable basis. It has also hired several teachers on an hourly, non-tenurable basis. Yet their duties are nearly identical. If tenure were a matter of contract, its protection would be available only to those employees that the boards choose to favor with it. This practice is obviously inequitable.

In short, we find no justification for the result in *Point Pleasant.* The language of *N.J.S.A.* 18A:28–5 is clear and unambiguous. The Legislature has granted the right to tenure to teaching staff members who fulfill the objective conditions

listed in the statute. This right is not dependent on an agreement between the parties.

■ We therefore overrule *Point Pleasant*. We hold that all teaching staff members who work in positions for which a certificate is required, who hold valid certificates, and who have worked the requisite number of years, are eligible for tenure unless they come within the explicit exceptions in *N.J.S.A.* 18A:28–5 or related statutes such as *N.J.S.A.* 18A:16–1.1. The remedial and supplemental teachers in the cases decided today are covered by the statutory language. We find no exception in any statute that would deny them eligibility for tenure. We hold that those teachers who have satisfied the statutory conditions are entitled to tenure, no matter what the source of the funding for their salaries.

## IV

■ We next address the question whether Title I teachers may acquire tenure. The *Point Pleasant* court suggested that the source of funds to pay for teachers' salaries was relevant to determining whether they had been hired on a temporary basis. 173 *N.J.Super.* at 18. The Appellate Division in *Spiewak* held that Title I teachers may acquire tenure if their employment has in fact become permanent. 180 *N.J.Super.* at 318–19. The Appellate Division in *Hamilton Tp.*, on the other hand, stated that *Point Pleasant* had held that Title I teachers could never acquire tenure under *N.J.S.A.* 18A:28–5 because of the tenuous nature of the funding. 180 *N.J.Super.* at 323.

Given our holding today that contract principles do not determine eligibility for tenure, this conflict among various Appellate Division decisions may be quickly resolved. The intent of school boards to hire Title I teachers on a temporary basis cannot deprive those teachers of tenure. The only question is whether any provision of the Tenure Act itself would deny its protection

to teaching staff members whose jobs are funded by federal rather than state money. We find no such provision.

The Appellate Division in *Hamilton Tp.* asserted: "It tortures common sense to believe that the Legislature intended tenure in potentially transient teaching situations such as state programs dependent on never certain federal funding." 180 *N.J.Super.* at 323. However, the court recognized that no provision of the statute itself excluded teachers in federally funded jobs. *Id.* Moreover, the tenuous nature of any funding should be irrelevant to a tenure decision since school boards have the power to dismiss tenured teachers for good faith economic reasons. *N.J. S.A.* 18A:28–9. *See* 180 *N.J.Super.* at 319 n.2. There is no reason to believe that the Legislature in fact intended to exclude Title I teachers from the scope of *N.J.S.A.* 18A:28–5. They are "teaching staff members" under *N.J.S.A.* 18A:1–1 and teaching staff members acquire tenure if they satisfy the objective criteria in *N.J.S.A.* 18A:28–5. We find no exception in the statute that would deny tenure to Title I teachers. In the absence of any evidence of legislative intent to the contrary, we hold that Title I teachers are eligible to acquire tenure if they meet the conditions stated in *N.J.S.A.* 18A:28–5.

## V

The various schools boards involved in these suits urge that in the event that we overrule *Point Pleasant*, we grant only prospective relief. We have previously declined to apply a new legal rule retrospectively when it constitutes a "significant change in the law." *Merenoff v. Merenoff*, 76 *N.J.* 535, 560 (1978). This policy rests on a perceived unfairness to parties that have acted in reliance on the rules established in prior case law. *See Ramirez v. Amsted Industries, Inc.*, 86 *N.J.* 332, 357 (1981). It is also intended to avoid any possible confusion in the administration of statutes and the execution of the law. *Tomarchio v. Greenwich Tp.*, 75 *N.J.* 62, 78 (1977).

It is apparent from the Appellate Division decisions below, as well as those in *Biancardi, Capella,* and *Point Pleasant,* that for some time the law on the tenurability of part-time, remedial and supplemental instructors has been in doubt. More importantly, we are overruling the decision in *Point Pleasant.* One can hardly imagine a clearer case of a clean break in the law than disapproval of a court decision that has been followed by state agencies. We therefore conclude that this decision should have only prospective application to those parties who are not before the Court.

However, we believe that the teachers here have the right to application of this new rule developed as a result of the litigation they commenced. We have often allowed litigants to benefit from application of a rule that is applied prospectively as to all other persons. *E.g., Ramirez v. Amsted Indus.,* 86 *N.J.* at 357; *Merenoff v. Merenoff,* 76 *N.J.* at 560; *Pascucci v. Vagott,* 71 *N.J.* 40, 50–51 (1976). The teachers in this case should not be denied the reward for their efforts and expense in challenging both the practice of their boards of education and the legal principles established by the various cases criticized here. *See Ramirez v. Amsted Industries,* 86 *N.J.* at 357.

We therefore hold that the legal rule established by these cases shall be applied prospectively to all persons not before the Court as well as to the teachers before us.[2]

---

[2]Teachers not before the Court will therefore not be entitled to any back pay award. Similarly, teachers not involved in this case who were terminated prior to the date of this opinion are not entitled to be rehired. However, all currently employed supplemental and remedial teachers should have their tenure eligibility calculated on the basis of this opinion from the beginning of their employment.

As to the teachers involved in this litigation, they are all entitled not only to tenure but also to retroactive payment of any benefits that they would have received if they had been awarded tenure properly. Further, Anderson is to be reinstated to her tenured position and to receive all retroactive benefits.

## VI

We hold that public school teachers who provide part-time remedial or supplemental instruction to educationally disabled children may acquire tenure if they meet the specific criteria in *N.J.S.A.* 18A:28–5. *Point Pleasant Beach Teachers' Ass'n v. Callam*, 173 *N.J.Super.* 11 (App.Div.1980), is overruled. We affirm the judgment of the Appellate Division in *Spiewak v. Rutherford Bd. of Ed.* and remand that case to the Commissioner of Education to determine when tenure accrued and what retroactive benefits are owed to the teachers. We affirm the judgment of the Appellate Division in *Hamilton Tp. Supplemental Teachers Ass'n v. Hamilton Tp. Bd. of Ed.* that all supplemental teachers who meet the criteria of *N.J.S.A.* 18A:28–5 are eligible for tenure. We remand the case to the Commissioner of Education to determine what retroactive benefits are owed to the teachers. We reverse the decision of the State Board of Education in *Anderson v. Summit Bd. of Ed.* and reinstate the judgment of the Commissioner of Education in that case. Anderson is to be reinstated to her tenured position and given all salary and other benefits that were rightfully due her from February 26, 1979 to the present time mitigated by her earnings, if any, during the time of the litigation.[3]

*For affirmance and remandment in Spiewak and Hamilton Tp. Supplemental Teachers Ass'n and reversal in Anderson* —Chief Justice WILENTZ and Justices PASHMAN, CLIFFORD, SCHREIBER, HANDLER and O'HERN—6.

*Opposed* —None.

---

[3]We do not decide what, if any, additional benefits the teachers in these cases are entitled to, either retroactively or prospectively. That is primarily a matter of contract and the relevant collective bargaining agreements are not part of the record. Further, the parties for the most part did not brief this question and the Appellate Division did not address it. We therefore remand to the Commissioner of Education to make that determination in accord with the principles laid down in this opinion.