IN THE MATTER OF SAYREVILLE EDUCATION ASSOCIATION, ON BEHALF OF JOANN RUCKI, JOSEPHINE MARCHESI AND DEBORAH FARLEY, PETITIONERS-APPELLANTS, v. BOARD OF EDUCATION OF THE BOROUGH OF SAYREVILLE, MIDDLESEX COUNTY, RESPONDENT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued February 15, 1984—Decided April 12, 1984.

Before Judges BOTTER, PRESSLER and O'BRIEN.

*Arnold S. Cohen* argued the cause for appellants (*Rothbard, Harris & Oxfeld,* attorneys; *Arnold S. Cohen* of counsel and on the brief).

*Casper P. Boehm, Jr.* argued the cause for respondent (*Boehm and Campbell,* attorneys; *Casper P. Boehm, Jr.* on the brief).

*Irwin I. Kimmelman,* Attorney General of New Jersey, filed a Statement in Lieu of Brief on behalf of respondent State Board of Education (*June Kanter,* Deputy Attorney General, on the Statement).

The opinion of the court was delivered by

PRESSLER, J.A.D.

The question raised by this appeal from a final determination of the State Board of Education (State Board) is whether a local board of education may fill a teaching staff vacancy occurring after commencement of the academic year by appointing a substitute teacher for the balance of the year pursuant to *N.J.S.A.* 18A:16–1.1. We conclude that the long-term substitute-teacher technique may not be used to fill a vacancy and therefore we reverse the contrary holding of the Board.

The factual context of this controversy is substantially undisputed. Appellant JoAnn Rucki was hired by respondent Sayreville Board of Education (board) on February 17, 1981 to replace a teacher who had resigned earlier that month. Appellants Josephine Marchesi and Deborah Farley were hired by the Board on March 2, 1981, one to replace a teacher who had retired and the other to replace a teacher who had resigned. Each of the three held an appropriate regular certificate. Although each was hired without written contract, each asserted the understanding that she would be employed in her respective teaching assignment for the balance of the school year. And each agreed to accept a per diem salary of $56 per day in accordance with the existing collective negotiation agreement

which stipulated that salary for a so-called long-term substitute teacher.

As substitute teachers, appellants were denied the statutory and contractual benefits available to regular teaching staff members, including accumulation of tenure credit pursuant to *N.J.S.A.* 18A:28–5, paid sick leave pursuant to *N.J.S.A.* 18A:30–2, paid public holidays pursuant to *N.J.S.A.* 18A:25–3, membership in the Teachers Pension and Annuity Fund pursuant to *N.J.S.A.* 18A:66–2(*p* ), and the various benefits provided for regular teaching staff members by the negotiated contract between the board and the teachers' association. Appellants' basic contention on this appeal, rejected both by the Commissioner of Education and the State Board, is that they were improperly categorized as long-term substitute teachers since they were each hired to fill a vacancy for the balance of the school year. We are satisfied that appellants are correct in this contention.

*N.J.S.A.* 18A:1–1 defines a teaching staff member as:

... a member of the professional staff of any district or regional board of education, or any board of education of a county vocational school, holding office, position or employment of such character that the qualifications, for such office, position or employment, require him to hold a valid and effective standard, provisional or emergency certificate, appropriate to his office, position or employment, issued by the state board of examiners and includes a school nurse.

Appellants are, literally, within this definition. Nevertheless, we recognize that this definition is qualified by *N.J.S.A.* 18A:16–1.1, which provides for temporary employment of substitute teachers. We acknowledge that a person properly employed pursuant to *N.J.S.A.* 18A:16–1.1 is not entitled to the status and the consequent benefits of teaching staff membership. See *Spiewak v. Rutherford Bd. of Ed.*, 90 *N.J.* 63, 77 (1982). Thus, the only issue before us is whether, in the circumstances here, appellants were properly classified as substitute teachers under the statute.

*N.J.S.A.* 18A:16–1.1 provides in full that:

In each district the board of education may designate some person to act in place of any officer or employee during the absence, disability or disqualification of any such officer or employee subject to the provisions of section 18A:17–13.

The act of any person so designated shall in all cases be legal and binding as if done and performed by the officer or employee for whom such designated person is acting but no person so acting shall acquire tenure in the office or employment in which he acts pursuant to this section when so acting.

We construe the authorization of this provision as applying when the services of a substitute teacher are required because of the temporary absence, even if protracted, of a regular teacher whose return to duty is contemplated. We do not construe it as authorizing the use of a substitute to fill a vacant position on a long-term basis. This interpretation, in our view, accords with the plain meaning of the statutory provision. The phrase, "to act in place of any officer or employee during the absence, disability or disqualification of any such officer or employee," clearly implies a temporary arrangement. That is, the "place" which is the intended subject of the statute is the place of another which that other will reclaim when his period of absence is over. The substitute is appointed to act for the other during that period. If that other employee has, however, terminated his employment, then the place which the appointee is filling is not the place of the other but rather a vacant place, and the statute ordinarily does not apply. This interpretation is, moreover, in accord with the observation in *Spiewak v. Rutherford Bd. of Ed., supra,* 90 *N.J.* at 77, that the exception to the tenure statute which *N.J.S.A.* 18A:16–1.1 constitutes "is limited to employees hired to take the place of an absent teacher." Again the implication is clear that the place for which the temporary substitute teacher was hired is not vacant but only temporarily unoccupied by its incumbent.

Clearly, a local board of education could not indefinitely fill a vacancy by the statutory substitute technique, no matter how financially advantageous it might be. Nor could it use that technique to fill a vacancy for a full academic year. Any such attempt would constitute an obvious effort to circumvent the school laws and would be condemned as such. *Cf. Jersey City*

*Bd. of Educ. v. Wall,* 119 *N.J.L.* 308 (Sup.Ct.1938); *Downs v. Hoboken Bd. of Educ.,* 13 *N.J.Misc.* 853 (Sup.Ct.1935).

We perceive no basis on which to distinguish between filling a vacancy for a full academic year and filling a vacancy for a substantial part of an academic year. The role the teacher plays in terms of the extent and scope of responsibility for his class is virtually the same in either case, as are his duties and the way in which he functions as part of the faculty. It is therefore obviously unfair to deny that teacher the same benefits to which all of his colleagues, doing the same job, are entitled.

We do not, moreover, see how the filling of a vacancy by appointment of a regular staff member for less than a full academic year could prejudice the legitimate interests either of the board or of the public in promoting sound educational policy. First, it must be pointed out that unlike many other public employments, teachers are not subject to provisional appointment. The board is given the opportunity by statute to evaluate a teacher hired by it as an "unknown quantity" on an annual basis before making its tenure decision and is not required to renew the annual contract of or to grant tenure to a not-yet-tenured teacher with whom it is dissatisfied. The operation of this statutory scheme is not affected in any material way by the fact that a teacher is initially hired for part of an academic year rather than for a full academic year.

While we recognize the necessity for a local board to have some reasonable flexibility in order to deal with potential reduction in force problems and the scheduling impact of long-term absences, we are nevertheless satisfied that our interpretation of *N.J.S.A.* 18A:16–1.1 does not interfere with those needs. As the Supreme Court said in *Spiewak v. Rutherford Bd. of Ed., supra,* 90 *N.J.* at 79–80, in responding to a similar argument:

> ... First, the Legislature has determined that the utility of tenure to improving education outweighs any costs in decreased "flexibility." That is a policy determination that has been made by the Legislature. It is not proper for courts to override that determination on the basis of their independent policy

conclusions. Second, the tenure statute in no way deprives a school board of flexibility. A board can deny tenure to a teacher simply by dismissing her before she has completed the required years of service. Finally, the Legislature has expressly provided that tenured teachers may be dismissed if the board deems it advisable to reduce the number of teaching positions for economic reasons or because of reduction in the number of pupils or other good cause.

We also point out that nontenured teachers are, by virtue of *N.J.S.A.* 18A:27–10, accorded the statutory right to receive notice by April 30 of whether or not they are to be rehired for the next succeeding academic year. But this right does not force a board into a premature decision respecting a teacher employed for only part of an academic year since the statute, by its terms, applies only to teachers continuously employed since September 30 of the academic year in which the notice is required to be given. Thus, in respect of a teacher hired after that date, the board is under no constraint to make a rehiring decision until after the conclusion of the partial academic year during which the teacher was employed.

A further significant consideration is the fact that when a substitute appointment is made because of a temporary absence, a board of education would have to incur the expense of providing duplicative benefits if both the substitute and the absent teacher were to be regarded as simultaneously entitled to all of the statutory and contractually mandated benefits of regular staff membership. Where, however, the absentee's employment relationship with the board has been terminated at the time the "substitute" is appointed and there is hence a vacancy in that position, no question of duplication of benefits arises. Thus, in terms of a board's legitimate economic concerns, the withholding of regular staff membership from a substitute teacher who fills a position whose incumbent is only temporarily absent is a sensible approach and perhaps even a financial necessity. That is not so when the position is vacant and only one regular staff member, the "substitute," can occupy it.

In concluding, despite these considerations, that the appellants were only temporary substitutes not entitled to teaching staff membership, the Commissioner and the State Board relied on *Biancardi v. Waldwick Bd. of Educ.*, 139 *N.J.Super.* 175 (App.Div.1976), aff'd o.b., 73 *N.J.* 37 (1977), and *Driscoll v. Clifton Bd. of Educ.*, 165 *N.J.Super.* 241 (App.Div.1977), aff'd o.b., 79 *N.J.* 126 (1979). We do not, however, regard those decisions as dispositive.

*Biancardi* involved a teacher appointed as a substitute in April for the balance of that academic year. She was thereafter reappointed for each of the next three successive academic years. The sole question there presented was whether the teacher's "substitute" employment immediately prior to the first of her three successive contracts counted towards tenure so that, pursuant to *N.J.S.A.* 18A:28–5(c), she would have achieved tenure at the end of that third full academic year by reason of having been employed for "the equivalent of more than three academic years within a period of any four consecutive academic years." The majority of the Appellate Division held that the substitute period could not be counted because substitutes are not regular staff members within the intendment of *N.J.S.A.* 18A:28–5. It went on to hold that the teacher could not challenge her substitute status for that period because she had agreed to it by accepting the substitute's per diem salary without any of the emoluments of regular staff membership. The only reference in the Appellate Division opinion to the circumstances requiring the substitute appointment is the observation in Judge Fulop's dissent that the regular teacher had left. Presumably then, *Biancardi* did deal with a vacancy rather than a temporary absence.

Clearly, if the Supreme Court's affirmance of the Appellate Division majority decision in *Biancardi* had been its last word, we would have been bound by it. But *Biancardi* is not the Supreme Court's last word on the subject. In *Spiewak v. Rutherford Bd. of Ed.*, *supra*, the Court held that teachers providing remedial and supplemental instruction to educational-

ly handicapped children are entitled to acquire tenure even if it had been their express agreement to accept temporary employment. The basis for this holding was the Court's view that tenure is a statutory rather than contractual matter and is therefore to be determined by the functional rather than the contractual attributes and character of the teacher's employment.[1] In reaching this conclusion the Court expressly disapproved *Biancardi* to the extent it could be construed "to imply that the right to tenure derives from contract rather than statute" and to the extent it could be construed "to suggest that the courts may create exceptions to the clear language of *N.J.S.A.* 18A:28-5 ...." 90 *N.J.* at 80.

As noted, the conceptual basis of *Biancardi* was the teacher's acceptance of temporary employment as a substitute. The viability of that conceptual basis has been expressly vitiated by *Spiewak*. Moreover, the *Biancardi* Court did not examine the functional nature of the teacher's employment in order to determine if the facts and circumstances surrounding her "substitute" period warranted its characterization as temporary. Nor did it refer at all to what we regard as the semantic, conceptual, and functional anomaly of appointing a substitute to fill a vacancy. We therefore conclude that *Biancardi*, insofar as it undertook to define teaching staff membership in terms of the tenure statute, is no longer an accurate statement of the law of this jurisdiction.

---

[1]We do not regard the absence of a written contract here pursuant to *N.J.S.A.* 18A:27-5 as dispositive since clearly a local board may not, by the act of withholding a written contract from a teacher, unilaterally determine the character of the teacher's employment. We note in this regard that the testimony suggests that the respondent board's written contracts with untenured teachers contained a 60-day notice of termination provision. We are satisfied that the device of a termination provision adequately protects whatever legitimate concerns a local board may have in respect of employing regular teaching staff members in the middle of an academic year. *Cf. Mozier v. Cherry Hill Bd. of Educ.*, 450 *F.Supp.* 742 (D.N.J.1977).

*Driscoll v. Clifton Bd. of Educ., supra,* is inapposite since that case involved a substitute appointment to a teaching position which the board deemed to be only temporarily available and from which its incumbent had been placed in an absentee status. As the court there noted, in what was the factual linchpin of its decision, the position in question was not vacant when the substitute teacher was appointed and did not actually become vacant until after the end of the academic year in question when its incumbent, one Elena Voss, resigned. The court agreed that the board of education had been well advised not to regard the position as abandoned when the incumbent failed to return following a maternity leave, noting that:

> A unilateral determination that Voss abandoned her position could have resulted in expensive litigation should Voss have sought to return during the balance of the school year. Moreover, it could have resulted in the payment to Voss of her normal compensation as well as the payment to petitioner of similar compensation if given a contract as a regular teacher for the balance of the school year.
>
> A tenured teacher may only be involuntarily dismissed pursuant to *N.J.S.A.* 18A:6–10 *et seq.,* the Tenure Employees Hearing Law. Thus the local board had no real freedom of action as to Voss. See *In re Tenure Hearing of Grossman,* 127 *N.J.Super.* 13 (App.Div.1974), certif.den. 65 *N.J.* 292 (1974). [165 *N.J.Super.* at 247.]

The point then is clear. *Driscoll* constitutes a persuasive demonstration of the reasons why a long-term substitute should not be deemed a teaching staff member in the case of the temporary absence of the regular staff member. It does not address, however, the propriety of treating a teacher as a long-term substitute and denying him the benefits of regular staff membership when the "substitute" appointment is made to fill a vacancy.

We recognize that there may be special situations beyond those implicated in this case in which a board may have a legitimate need to appoint a short-term substitute for a relatively brief time when a vacancy occurs during the school year. It may be, for example, that a board may not be immediately prepared to fill a vacancy suddenly occurring for the balance of the school year. It would, therefore, require the flexibility of

being able to appoint a short-term temporary substitute while it determined the best course to follow in permanently assigning the former teacher's duties for the balance of the year. We do, however, hold that if a relatively substantial balance of the school year remains when the vacancy occurs and the board is prepared, as here, to fill that vacancy until the end of the school year, it may not resort to the long-term substitute technique in doing so.

For the foregoing reasons and in conformance with what we believe the holding and spirit of *Spiewak* to require, we hold that the three teachers here, all of whom had been hired to fill a vacancy for a substantial balance of the 1980–1981 academic year, were entitled to teaching staff membership during the time in which they so served and consequently to all of the rights and benefits of that status. We therefore reverse and remand for entry of an order according them the benefits to which they were entitled.