SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**Bridgewater-Raritan Education Association v. Board of Education of the Bridgewater-Raritan School District**
(A-85-13) (073873)

**Argued March 3, 2015 -- Decided May 6, 2015**

**LaVECCHIA, J., writing for a unanimous Court.**

In this appeal, the Court considers whether three teachers employed by the Board of Education of the Bridgewater-Raritan School District (Board) appropriately were denied tenure as a matter of law or equity under circumstances calling into question the interplay of N.J.S.A. 18A:28-5, which establishes the general rule by which teachers obtain tenure, and N.J.S.A. 18A:16-1.1, which creates an exception to that general rule.

Tamara Manzur was hired by the Bridgewater-Raritan School District in September 2006 as a replacement teacher for a full-time teacher who was commencing parental leave. The school principal informed Manzur that the job would count toward acquisition of tenure, a statement which later was confirmed by the district's superintendent of schools, Dr. Michael Schilder. Manzur was rehired for the 2007-08 school year, although there is no evidence as to whether she was informed that the position was a replacement position. Manzur again was rehired for 2008-09 and 2009-10. In a September 2009 letter, Schilder informed Manzur that only time worked in a permanent position, not as a replacement, counted toward tenure. The letter stated that Manzur's tenure earning start date was September 1, 2008, since she served as a leave replacement from January 2, 2007 through June 30, 2007. In April 2011, Manzur was informed that her contract would not be renewed. She completed her service in June 2011, less than three months short of her tenure date.

Carol O'Neil was hired by the district in March 2007 as a replacement for a teacher who was on maternity leave. The principal informed O'Neil that her service as a replacement would not count toward tenure. O'Neil was rehired for the 2007-08 school year and was told by the principal that her service that year would count toward tenure. However, her evaluation for the 2007-08 school year reaffirmed her status as a replacement, as did her evaluation for the following school year. In September 2009, O'Neil received a letter from Schilder stating that, since was a replacement teacher for the 2007-08 and 2008-09 school years, she would not receive tenure until September 2012. In April 2011, O'Neil was informed that her contract would not be renewed.

Maggie Cassidy began working as a replacement teacher in September 2007. Cassidy was informed by her building supervisor and Schilder that her position would count toward obtaining tenure. She was rehired for the same position for the 2008-09 school year and for a different position for the 2009-10 school year. Like Manzur and O'Neil, Schilder subsequently informed Cassidy that her 2007-08 replacement employment would not count toward tenure, projecting her tenure-acquisition date to be September 2011. Although Cassidy was rehired for the 2010-11 school year, her contract was not renewed for 2011-12.

On behalf of Manzur, O'Neil, and Cassidy, the Bridgewater-Raritan Education Association filed a petition of appeal with the Commissioner. The matter was referred to the Office of Administrative Law as a contested case, and the Board moved for summary decision. The Association maintained that the teachers were entitled to tenure as a matter of law and under the equitable principles of apparent authority and equitable estoppel. An administrative law judge (ALJ) granted the Board's motion, finding that none of the teachers met the statutory requirement for tenure because they each had served as temporary replacements for other tenured teachers. The ALJ rejected the Association's equitable arguments and concluded that the Board was not required to notify teachers of their status as replacement teachers under N.J.S.A. 18A:16-1.1. The Commissioner affirmed the ALJ's decision.

The Association appealed, and the Appellate Division, in an unpublished decision, affirmed. The panel noted that N.J.S.A. 18A:16-1.1 did not expressly require that a teacher be given notice of his or her replacement status. The panel also rejected all of the Association's equitable arguments. It explained that apparent-authority theories are disfavored as against government actors, and invoking equitable estoppel would interfere with the essential government function of granting tenure. Moreover, the panel noted that the Board itself had not made any representations inducing the teachers' reliance. This Court granted the Association's petition for certification. 217 N.J. 304 (2014).

**HELD:** N.J.S.A. 18A:16-1.1 requires a board of education to give an employee notice of his or her designation as a "replacement." With respect to the claim of Tamara Manzur, a genuine issue of material fact exists regarding whether she was provided such notice as to her status during the 2007-08 school year.

1. N.J.S.A. 18A:28-5 establishes the general rule by which teachers employed in a school district acquire tenure. The Legislature created an exception to that rule in situations where an individual is designated to act in the place of an employee during that employee's absence, disability, or disqualification. In such cases, N.J.S.A. 18A:16-1.1 provides that "no person so acting shall acquire tenure in the office or employment in which he acts pursuant to this section when so acting." It is well-settled that, in order to acquire tenure, a teacher must demonstrate compliance with the conditions set forth in N.J.S.A. 18A:28-5. Plaintiffs here fall within the express terms of the statute and are presumptively eligible for tenure in the absence of a statutory exception. (pp. 11-12)

2. Although it is a settled principle of school law that temporary replacement, or substitute, teachers do not earn credit toward tenure for time spent as a replacement, there is a paucity of case law explaining how someone can be designated as a replacement teacher. In order for N.J.S.A. 18A:16-1.1 to apply, two criteria must be met: (1) the individual must be acting in place of a teacher; and (2) the teacher must be absent or disabled. Here, the Court must determine if a third criterion is necessary, namely that the individual be notified that he or she is a replacement teacher. N.J.S.A. 18A:16-1.1 repeatedly states that a replacement teacher should be "designated" as such. A natural reading of "designate" contemplates that a person, who is "designated" as having some conferred status, is informed of the designation or is made aware of the conferred status. Thus, applying the basic rule of statutory construction that plain language is ascribed its ordinary meaning, the Court construes N.J.S.A. 18A:16-1.1 to require a board of education to make an employee aware that he or she is being employed as a "replacement." The Court is unpersuaded that the absence of an express notice requirement means that the Legislature intended to forego a notice obligation under N.J.S.A. 18A:16-1.1. Withholding notice of a teacher's designation as a replacement could allow school districts to manipulate designations to avoid tenure, thereby undermining the Legislature's efforts to prevent boards from abusing their power over teachers in contract negotiations. The Court recognizes that its interpretation of "designate" is the first declaration of the notice obligation contained in N.J.S.A. 18A:16-1.1, and it affords the benefit of this interpretation to the Association. (pp. 12-17)

3. Turning to the matters at issue here, the Court agrees with the Appellate Division that equitable principles are inapplicable. Under the tenure statutes, only a school board, and not individual members of the administration, may employ teaching staff members, a fact of which the teachers here were aware. The doctrine of apparent authority, which offers an equitable remedy where a principal's manifestations of support induce a third party to reasonably rely on an agent's representations, is inapplicable here because, although the superintendent and administrators acted as agents of the Board, the Board itself never misrepresented those agents' authority to alter the conditions for tenure acquisition. The doctrine of equitable estoppel is only invoked against government entities to prevent manifest injustice and requires a knowing and intentional misrepresentation by the party sought to be estopped. Again, the Board itself never made misrepresentations that could have misled the teachers. Although the administrators' misrepresentations of the teachers' status was inappropriate, they cannot bind the Board. (pp. 17-20)

4. Here, the three teachers were told that they were replacements for another teacher for each school year of their service, thereby receiving the rudiments of notice that the Court holds must be provided to replacement teachers. However, Manzur's claim may be an exception. Viewing the evidence in the light most favorable to Manzur, as the party who did not move for summary decision, the Court finds that a genuine issue of material fact exists with regard to her 2007-08 teaching status. Specifically, there is no evidence establishing that Manzur was given notice that she continued to work as a replacement during that school year. Thus, the Board was not entitled to summary decision on Manzur's claim. If Manzur ultimately succeeds on her claim that no notice was provided, she is entitled to receive credit for the school year in question. (pp. 20-24)

The judgment of the Appellate Division is **AFFIRMED IN PART** and **REVERSED IN PART**, and the matter is **REMANDED** for further proceedings consistent with this opinion in respect of the claim involving Tamara Manzur.

**CHIEF JUSTICE RABNER; JUSTICES ALBIN, PATTERSON, FERNANDEZ-VINA, and SOLOMON; and JUDGE CUFF (temporarily assigned) join in JUSTICE LaVECCHIA's opinion.**

2

BRIDGEWATER-RARITAN EDUCATION
ASSOCIATION on behalf of
TAMARA MANZUR, CAROL O'NEIL
and MAGGIE CASSIDY,

    Petitioners-Appellants,

        v.

BOARD OF EDUCATION OF THE
BRIDGEWATER-RARITAN SCHOOL
DISTRICT, SOMERSET COUNTY,

    Respondent-Respondent.

    Argued March 3, 2015 – Decided May 6, 2015

    On certification to the Superior Court,
    Appellate Division.

    William P. Hannan, II, argued the cause
    for appellants (Oxfeld Cohen, attorneys;
    Mr. Hannan and Sanford R. Oxfeld, of counsel
    and on the brief).

    Stephen J. Edelstein argued the cause for
    respondent Bridgewater-Raritan Regional Board
    of Education (Schwartz Simon Edelstein & Celso,
    attorneys; Nicholas Celso, III, of counsel,
    Mr. Celso and Douglas M. Silvestro, on the
    brief).

    Donna S. Arons, Deputy Attorney General,
    appeared on behalf of respondent New Jersey
    Commissioner of Education (John J. Hoffman,
    Acting Attorney General of New Jersey,
    attorney; Lewis A. Scheindlin, Assistant
    Attorney General, of counsel; Frederick H. Wu,

Deputy Attorney General, on letter in lieu of brief).

JUSTICE LaVECCHIA delivered the opinion of the Court.

Teachers ordinarily obtain tenure in a position when they serve for any of the time periods set forth in N.J.S.A. 18A:28-5. The Legislature created an exception to that general rule in N.J.S.A. 18A:16-1.1. Under that exception, a board of education may designate a person to act in the place of an officer or employee during the officer's or employee's absence, disability, or disqualification and no person so designated as a replacement shall acquire tenure based on such temporary service. Ibid. In this appeal, the Court is asked to decide whether three teachers employed by the Board of Education of the Bridgewater-Raritan School District (Board) appropriately were denied tenure as a matter of law or equity under circumstances calling into question the interplay of those two statutes. The Appellate Division judgment under review affirmed the Commissioner of Education's dismissal of the action brought on behalf of the three teachers. We now affirm in part and reverse in part.

I.

A.

Petitioner Bridgewater-Raritan Education Association (Association) appealed on behalf of the teachers after they were notified by the Board that their contracts would not be renewed.

2

All three teachers (1) had been told by high-level school district administrators -- including the district's superintendent of schools -- that their time working as a replacement teacher counted toward the acquisition of tenure, (2) had worked for the school district for at least three full school years, and (3) had worked for at least one full school year as a replacement teacher. Their individual circumstances are summarized below.[1]

Tamara Manzur initially was hired by the school district in September 2006 as a replacement teacher for a full-time sixth-grade teacher who was commencing parental leave. She was informed that the job was for the entire school year (from September 2006 to June 2007), and was told by the school's principal that the job would count toward acquisition of tenure. Upon Manzur's inquiry, the district's superintendent of schools, Dr. Michael Schilder, confirmed to her, at a later date, that time spent replacing a teacher on maternity leave counted toward

---

[1] The facts are taken from the teachers' affidavits and supporting documents, which were filed in opposition to the Board's motion for summary decision and must be taken as true for purposes of summary decision. See Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 535 (1995); Contini v. Bd. of Educ. of Newark, 286 N.J. Super. 106, 121 (App. Div. 1995), certif. denied, 145 N.J. 372 (1996).

tenure acquisition.  Manzur received a copy of her 2006-07 school-year contract in January 2007.

Manzur was rehired as a sixth-grade teacher for the 2007-08 school year; however, there is no evidence in this record that she was informed that she was replacing another teacher nor was she so notified in her contract or other written materials. There appears in this record no dispute that she taught in the same classroom as she did in the 2006-07 school year.  Manzur was rehired for the same position for the 2008-09 school year, but she was notified that she was being transferred to a fifth-grade teaching position prior to the beginning of the school year.  Manzur was rehired for the 2009-10 school year again as a fifth-grade teacher.

In a September 2009 letter, Schilder informed Manzur that pursuant to the law governing covering teacher tenure, "only time worked in a permanent position can be counted toward" tenure and that time worked in a position while covering another teacher's absence from that position does not count toward tenure.  Schilder's letter further informed Manzur that her "tenure earning start date" was September 1, 2008, and that she would receive tenure on September 2, 2011.  The letter stated, "[s]ince you were a leave replacement for Concetta Fischer from 1/2/07 to 6/30/07, this time does not count toward tenure."  No

4

reference was made to the 2007-08 school year for which Manzur was rehired as a sixth-grade teacher. Manzur asserts that she was not told she was filling in for another teacher for the 2007-08 school year.

After being rehired as a fifth-grade teacher for the 2010-11 school year, Manzur was informed by letter dated April 27, 2011, that the school district would not be renewing her contract. Manzur completed her service in June 2011, less than three months short of the three years that she would have needed in order to secure tenured status.

Carol O'Neil was hired by the district in March 2007 as a replacement for a fourth-grade teacher who was going on maternity leave. The school's principal told O'Neil that her service as a replacement teacher through the end of the school year would not count toward tenure. O'Neil was not provided a contract for the period of March 2007 to June 2007.

O'Neil was rehired as a fourth-grade teacher for the 2007-08 school year and was assured by the school's principal that, because she would work under a contract for the entire year, her service for that period would count toward attaining tenure. Her contract for that school year did not state that she was serving as a replacement teacher; however, her evaluation for the 2007-08 school year, which was provided to her, reaffirmed

5

that she worked as a replacement teacher.  The 2007-08 evaluation, dated March 31, 2008, states:  "Mrs. O'Neil joined our staff this year as a Grade 4 maternity leave replacement for Mrs. Karen Bauer."  O'Neil was rehired for the 2008-09 school year and again her 2008-09 evaluation, dated March 31, 2009, referred to her replacement status:  "Mrs. O'Neil has been serving as a Grade 4 maternity leave replacement for Mrs. Karen Bauer."  She received contracts to teach for the 2009-10 and 2010-11 school years also, and "at all times" her principal openly stated O'Neil was on a tenure track.

O'Neil believed that she would acquire tenure at the beginning of the 2010-11 school year.  However, like Manzur, O'Neil received a letter from Schilder in September 2009 informing O'Neil of her tenure-acquisition date.  The letter stated that O'Neil would not receive tenure until September 2012 because she had served as a replacement teacher for the 2007-08 and 2008-09 school years.  O'Neil received another letter on April 27, 2011, informing her that her contract would not be renewed.

Maggie Cassidy began working in the school district on September 1, 2007, as a replacement for a teacher on maternity leave.  Cassidy had been serving as a replacement teacher in another district, where she had been informed that her time

6

spent serving as a replacement did not count toward tenure. Seeking a tenure-track position, Cassidy specifically asked whether her position as a replacement teacher in the district would count toward the acquisition of tenure. Both her building supervisor and Schilder told her that the position would indeed count toward qualifying for tenure.

Cassidy was rehired for the same position in the 2008-09 school year, and she was hired to fill a different position at another school building for the 2009-10 school year. Cassidy's contracts made no reference to her being a replacement teacher or indicated that her service under those contracts would not count toward tenure.

Like Manzur and O'Neil, Schilder informed Cassidy by letter that her 2007-08 employment would not count toward achieving tenure because Cassidy was serving as a replacement. The letter projected her tenure-acquisition date to be September 2, 2011. After being rehired for the 2010-11 school year, Cassidy's contract was not renewed for the 2011-12 school year.

Both Manzur and O'Neil aver that they would have sought work elsewhere had they known that service as a replacement teacher in the district did not count toward acquiring tenure. Similarly, Cassidy states that she would not have sought employment with the district if she had known that her

7

replacement-teacher status was a bar to accruing time toward tenure.

B.

The Association filed a Petition of Appeal with the Commissioner on behalf of Manzur, O'Neil, and Cassidy, arguing that all three teachers were entitled to tenure. After the matter was transferred to the Office of Administrative Law (OAL) as a contested case, the Board filed a motion for summary decision pursuant to N.J.A.C. 1:1-12.5 and N.J.A.C. 6A:3-1.12(b).

In opposing summary decision, the Association argued that the teachers were entitled to tenure under the principles of apparent authority and equitable estoppel, noting that they had been told by high-level administrators that replacement-teacher service counts toward tenure. The Association further contended that Manzur was entitled to tenure as a matter of law because Schilder's September 2009 letter -- written after Manzur had worked the entire 2007-08 and 2008-09 school years -- stated Manzur was "a leave replacement for Concetta Fischer from 1/2/07 to 6/30/07," but made no reference to the 2007-08 school year. According to the Association, even if the administrators' representations that replacement teaching counted toward tenure are disregarded, Manzur's 2007-08, 2008-09, and 2009-10 teaching

8

time rendered her tenured when she began work for the 2010-11 school year on September 2, 2010.

An administrative law judge (ALJ) assigned to hear the matter granted the Board's motion for summary decision, finding that none of the teachers met the statutory requirement for tenure because they had each served as temporary replacements for other tenured teachers. The ALJ concluded that the Board was not required to notify the teachers of their status as replacement teachers under N.J.S.A. 18A:16-1.1 and also rejected the Association's equitable arguments. The ALJ determined that the Board could not be bound by the representations of its agents and that the Board itself never made any intentional misrepresentations of fact.

The Commissioner affirmed the ALJ's decision and, in an unpublished decision, the Appellate Division affirmed.

The panel noted that the Legislature did not expressly require in N.J.S.A. 18A:16-1.1 that a teacher be given notice of his or her replacement status, "despite requiring notice to teachers of other information" in other statutes. The panel added that, "[n]otice or not, Manzur apparently did not serve as a regular teacher for the statutorily-required period." The panel noted that Manzur occupied the same position in 2007-08 as in 2006-07, when she had been informed of her status as a

9

replacement, and observed further that Schilder's September 2009 letter's projected tenure date of September 2, 2011, was consistent with replacement status for 2007-08. The panel stated that Manzur's affidavit did not assert that she was not serving as a replacement in 2007-08, "but only that she was never told she was replacing another teacher that year." Therefore, the panel concluded that the Commissioner had rightfully determined that Manzur had not raised a material issue as to her employment status in 2007-08.

Further, the Appellate Division rejected all of the Association's equitable arguments. The panel noted that under N.J.S.A. 18A:27-1, -4 only the Board could have reduced the time necessary to acquire tenure and did not do so here. It declined to find apparent authority in this setting, noting that the use of apparent-authority theories are disfavored as against government actors. Finally, the panel stated that invoking equitable estoppel to bind the Board would interfere with the "essential government function" of granting tenure, that the Board itself had made no representations that would have induced the teachers' reliance, and concluded with the observation that the administrators' actions did not rise to the level of a "manifest injustice."

II.

10

Because this case requires us to assess the interplay of two statutes affecting the acquisition of tenure, we begin with a review of that background law and our conclusion as to how the statutes were intended to operate together.

At all times pertinent to this matter, N.J.S.A. 18A:28-5 provided that teachers acquire tenure upon employment in a school district for:

> (a) Three consecutive calendar years, or any shorter period which may be fixed by the employing board for such purpose; or
>
> (b) Three consecutive academic years, together with employment at the beginning of the next succeeding academic year; or
>
> (c) The equivalent of more than three academic years within a period of any four consecutive academic years.

The Legislature created an exception to that general rule with N.J.S.A. 18A:16-1.1, which provides:

> In each district the board of education may designate some person to act in place of any officer or employee during the absence, disability or disqualification of any such officer or employee subject to the provisions of section 18A:17-13.
>
> The act of any person so designated shall in all cases be legal and binding as if done and performed by the officer or employee for whom such designated person is acting but no person so acting shall acquire tenure in the office or employment in which he acts pursuant to this section when so acting.

11

[(Emphasis added.)]

Several aspects of tenure acquisition and the interplay of those two statutes are well-settled. First, "[b]y the express terms of [the Tenure Act], an employee of a board of education is entitled to tenure if (1) she works in a position for which a teaching certificate is required; (2) she holds the appropriate certificate; and (3) she has served the requisite period of time." Spiewak v. Bd. of Educ. of Rutherford, 90 N.J. 63, 74 (1982). Second, to acquire tenure a teacher must demonstrate compliance with "the precise conditions articulated in the statute." Picogna v. Bd. of Educ. of Cherry Hill, 143 N.J. 391, 400 (1996). The plaintiffs in this litigation fall within the express terms of the statute and "are therefore presumptively eligible for tenure unless a statutory exception applies." Spiewak, supra, 90 N.J. at 74 (emphasis added).

The exception at issue here concerns the tenure statute's applicability to temporary replacement, or substitute, teachers. The exception enables a school district to "designate some person to act in place of any officer or employee during the absence, disability or disqualification of any such officer or employee," N.J.S.A. 18A:16-1.1, and "no person . . . acting [as a replacement] shall acquire tenure in the office or employment in which he acts pursuant to this section when so acting," ibid.

12

It is a settled principle of school law that substitute teachers who "act in place of" another employee do not earn credit toward tenure for time spent as a replacement. Spiewak, supra, 90 N.J. at 74. Even if a regular teacher's absence is "protracted," so long as his or her "return to duty is contemplated," any teacher acting in place of the on-leave teacher will not be awarded tenure credit. Sayreville Educ. Ass'n v. Bd. of Educ. of Sayreville, 193 N.J. Super. 424, 428 (App. Div. 1984).

That said, there is a paucity of case law explaining how someone can be designated as a replacement teacher. In Platia v. Board of Education of Hamilton, 434 N.J. Super. 382 (App. Div. 2014), the Appellate Division discussed two requirements in the text of N.J.S.A. 18A:16-1.1. Specifically, an individual may not be characterized as a replacement unless the record demonstrates that he or she is (1) "act[ing] in place of" a teacher (2) "who is absent or disabled." Platia, supra, 434 N.J. Super. at 391 (quoting Spiewak, supra, 90 N.J. at 74) (internal quotation marks omitted). Both of those criteria must be satisfied for N.J.S.A. 18A:16-1.1 to apply. Ibid. In this matter, we must determine whether a third criterion is necessary, namely that the individual be notified that he or she is being designated as a replacement teacher.

N.J.S.A. 18A:16-1.1 repeatedly states that a teacher serving in place of another should be "designated" as such. To "designate" in common parlance means "[t]o indicate or specify," "[t]o give a name or title to," or "[t]o select for a duty, office, or purpose." Webster's II New Riverside University Dictionary 367 (1994). Thus, the natural reading of "designate" contemplates that a person, who is "designated" as having some conferred status, is informed that he or she has been so designated or is made aware of that conferred status. It is a basic rule of statutory construction to ascribe to plain language its ordinary meaning. See D'Annunzio v. Prudential Ins. Co. of Am., 192 N.J. 110, 119-20 (2007) ("[W]e look first to the plain language of the statute, and we ascribe to the statutory language its ordinary meaning." (citations omitted)); N.J.S.A. 1:1-1 (providing that words in statutes shall be given their "generally accepted meaning, according to the approved usage of the language" unless that reading is inconsistent with "the manifest intent of the legislature" or "different meaning is expressly indicated").

Applying that principle here -- to a statute that exists as an exception to the otherwise generally applicable statute that confers tenure upon mere completion of service for a period of time -- convinces us that the term "designate" in N.J.S.A.

14

18A:16-1.1 should be given its plain meaning. That meaning incorporates an obligation that the employer give notice to the employee receiving the specialized designation that takes the employee off the normal service road toward tenure. We construe N.J.S.A. 18A:16-1.1 to require a board of education to make an employee aware that he or she is being employed as a "replacement." That construction reasonably and fairly ensures that a person being offered specific employment as a replacement will not have the normal expectation that his or her time in service will count toward the acquisition of tenure, as commonly is the case under N.J.S.A. 18A:28-5.

The lack of transparency inherent in withholding the fact of such a designation could allow school districts to manipulate those designations to avoid tenure. We have previously noted that keeping teachers in the dark as to their employment status effectively negates what the Legislature has endeavored to address by the tenure statute, namely, "prevent[ing] school boards from abusing their superior bargaining power over teachers in contract negotiations." Spiewak, supra, 90 N.J. at 73.

In so concluding, we reject the Board's argument, accepted by the Appellate Division, that if notice was intended by the Legislature it could have said so. As the Board argued, such

15

express notice was included by the Legislature in other statutes.  See, e.g., N.J.S.A. 18A:6-4.15 (requiring notice to applicant of qualification for employment following criminal history background check); N.J.S.A. 18A:6-11 (requiring written notice of charges to tenured teachers in order to commence dismissal or reduction in salary); N.J.S.A. 18A:27-10 (requiring notice to teachers of either renewal or non-renewal of employment contract by May 15 of each year with continued employment being consequence of non-notice under N.J.S.A. 18A:27-11).  We are unpersuaded that the specific type of notice required in those statutes compels the conclusion that the Legislature intended to forgo any notice obligation under N.J.S.A. 18A:16-1.1.

In recognition that our construction is the first declaration of the notice obligation we find evident by the use of the term "designate" in that statute, we shall afford this clear statement of the statute's notice requirement application to the parties that successfully obtained the judgment in this matter.  See Rutherford Educ. Ass'n v. Bd. of Educ. of Rutherford, 99 N.J. 8, 26 (1985) ("It has long been our position that fundamental fairness generally requires that champions of the cause should be rewarded for their effort and expense in challenging existing law.").  That said, we perceive that only

16

Manzur is entitled to a remand in this matter for the reasons expressed below.

III.

The Association, on behalf of the three teachers, asserted a number of equitable arguments that it says require the Board to grant the teachers tenure. Essentially for the reasons expressed in the Appellate Division decision, we reject the argument that equitable principles may have any applicability in this matter.

Specifically, the teachers claimed that they were entitled to tenure in light of the misrepresentations by administrators' explicit statements that their time as temporary teachers would accrue tenure credit, when in fact it did not. However, under the tenure statutes only a school board, and not individual members of an administration, may employ teaching staff members. Despite the misrepresentations made by the superintendent of schools and other school administrators about reduced time periods for tenure acquisition, none of those individuals possessed the authority to alter the teachers' capability to accrue credit toward tenure. That roadblock is substantial and, ultimately, dooms all but Manzur's claims in this matter, even in their present posture as having been disposed of on motions

17

for summary decision. We briefly dispense with the equitable arguments advanced on behalf of the teachers.

The doctrine of apparent authority, relied upon by the teachers, in general offers an equitable remedy in situations when a principal's manifestations of support induce a third party to reasonably rely on an agent's representations. See Restatement (Third) of Agency § 2.03 (2006) (providing that apparent authority arises "when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations"); see, e.g., N.J. Lawyers' Fund for Client Prot. v. Stewart Title Guar. Co., 203 N.J. 208, 220-21 (2010) (relying on Restatement (Third) of Agency, supra, § 2.03 in finding attorney did not act with apparent authority on behalf of title insurance company). Here, the superintendent and other administrators acted as agents of the Board; however, the Board itself never misrepresented the authority of the superintendent or other administrators to offer a shortened period of time or alteration of conditions for the acquisition of tenure. Moreover, we note that there is no question but that each plaintiff had every reason to believe that it was the Board and only the Board that was employing them, not the individual members of the administration with whom they communicated.

18

Significantly, the doctrine of apparent authority generally is not held to apply to governmental actors. Governmental principals are "bound only by acts within the scope of the agent's actual authority." <u>See</u> <u>Restatement (Third) of Agency</u>, <u>supra</u>, § 2.03 comment g. As involved here, the doctrine exceeds its traditional parameters. Although we by no means countenance what the Superintendent of Schools -- the chief administrator of this school district -- did here in making representations to these teachers about replacement service being counted toward tenure acquisition, we are constrained by the state of the law that renders apparent-authority doctrine inapplicable to the instant matter.

Plaintiffs also argue that the doctrine of equitable estoppel should prohibit the Board from denying them tenure, despite that "equitable estoppel is rarely invoked against the government." <u>In re Johnson</u>, 215 <u>N.J.</u> 366, 386 (2013). Equitable estoppel may be invoked against a governmental entity only "to prevent manifest injustice." <u>O'Malley v. Dep't of Energy</u>, 109 <u>N.J.</u> 309, 316 (1987).

Here, plaintiffs seek to estop the Board from denying them tenure, despite that the superintendent and administrators, not the Board, made the misrepresentations in question. Application of estoppel, however, requires "a knowing and intentional

19

misrepresentation by the party sought to be estopped under circumstances in which the misrepresentation would probably induce reliance, and reliance by the party seeking estoppel to his or her detriment." Id. at 317 (emphasis added) (citations omitted). The Board itself never made knowing and intentional misrepresentations that could have misled the teachers involved here. Nothing in this record suggests that the Board mischaracterized the authority of administrators in respect of decisions regarding tenure. In an application of estoppel "the focus must be on the conduct of the person or entity who had the authority to act," which here can only be the Board. Maltese v. Twp. of N. Brunswick, 353 N.J. Super. 226, 245 (App. Div. 2002). As inappropriate as it was for these administrators to mischaracterize the teachers' status, the Association's assertion that the statements made by the superintendent and other school administrators warrant a finding of estoppel is misplaced. The misrepresentations by the superintendent, or other administrators who suggested that the teachers would be entitled to tenure credit for their positions as replacements, cannot bind the Board.

IV.

In this matter the three teachers were told, with one exception, that they were replacements for another teacher for

20

each school year of their service. Thus, they received the rudiments of notice that we now hold must be provided to a teacher hired as a replacement. Manzur's claim may be an exception. We turn to analyze more closely her argument about the second year of her service in light of the current record.

In that analysis, the procedural posture of this matter and the standard of review that applies in this setting must be borne in mind. The Board filed a motion for summary decision, which will be granted by the ALJ assigned to this contested case if "the pleadings, discovery and affidavits 'show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to prevail as a matter of law.'" Contini v. Bd. of Educ. of Newark, 286 N.J. Super. 106, 121 (App. Div. 1995) (quoting N.J.A.C. 1:1-12.5(b)), certif. denied, 145 N.J. 372 (1996). Under that standard, "[o]nce the moving party presents sufficient evidence in support of the motion, the opposing party must proffer affidavits setting 'forth specific facts showing that there is a genuine issue which can only be determined in an evidentiary proceeding.'" Ibid. (quoting N.J.A.C. 1:1-12.5(b)). The initial decision of the ALJ, as well as the final agency action on such a motion, must ultimately "determine 'whether the competent evidential materials presented, when viewed in the light most favorable to the non-

21

moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.'" Id. at 122 (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995)).

Here, viewing the evidence in the light most favorable to Manzur, a genuine issue of material fact exists with regard to Manzur's 2007-08 teaching status. Although the Board asserts that replacement status for 2007-08 can be inferred from Schilder's letter stating that Manzur's service in 2006-07 did not count toward tenure because it was a replacement-teaching year, the Board produced no evidence to establish that the position Manzur occupied in 2007-08 was one that she was told was already assigned to another teacher. Indeed, both parties acknowledge that the record does not demonstrate that Manzur was acting in place of Concetta Fischer for the 2007-08 school year, or that Fischer was "absent" for that year. In other words, even if Schilder's failure to mention the 2007-08 school year evinced his continued belief that Manzur worked as a replacement for Fischer for that year, no evidence proves that Manzur was given notice of the same. Manzur asserted in her affidavit that she was not told that 2007-08 was a replacement year, as she was before beginning work in the 2006-07 teaching year.

22

As noted previously, when pronouncing what amounts to a new rule of law -- here an interpretation of a statute that had not been clear before today's decision -- courts give to the party who carried the water and succeeded in securing the legal pronouncement the benefit of their successful argument. Rutherford Educ. Ass'n, supra, 99 N.J. at 26. Here Manzur is entitled to receive credit for the school year in question if she succeeds in her claim that no notice or other source of information of her replacement status was provided to her regarding her service for the 2007-08 school year.

At the very least, the Board was not entitled to summary decision because it bears the burden in such a motion generally, and on the question of notice of replacement status specifically, for which it, as the offering employer, is in the best position to prove. Here, based on the absence of evidence as to Manzur's actual status, Schilder's letter's failure to refer to the 2007-08 school year, and Manzur's assertions that, unlike the 2006-07 school year, she was never informed that she was replacing anyone in the 2007-08 school year, there exists an issue of material fact. A rational factfinder could find for Manzur on this evidence, rendering erroneous the award of summary decision to the Board based on the status of the current

23

record.  The matter must be remanded for further proceedings as to Manzur's claim for tenure.

V.

For the reasons expressed, the judgment of the Appellate Division is affirmed in part and reversed in part, and the matter is remanded for further proceedings consistent with this opinion in respect of the claim involving Tamara Manzur.

CHIEF JUSTICE RABNER; JUSTICES ALBIN, PATTERSON, FERNANDEZ-VINA, and SOLOMON; and JUDGE CUFF (temporarily assigned) join in JUSTICE LaVECCHIA's opinion.

SUPREME COURT OF NEW JERSEY

NO.    A-85             SEPTEMBER TERM 2013

ON CERTIFICATION TO       Appellate Division, Superior Court

BRIDGEWATER-RARITAN EDUCATION
ASSOCIATION on behalf of
TAMARA MANZUR, CAROL O'NEIL
and MAGGIE CASSIDY,

       Petitioners-Appellants,

           v.

BOARD OF EDUCATION OF THE
BRIDGEWATER-RARITAN SCHOOL
DISTRICT, SOMERSET COUNTY,

       Respondent-Respondent.

DECIDED          May 6, 2015

               Chief Justice Rabner        PRESIDING

OPINION BY            Justice LaVecchia

CONCURRING/DISSENTING OPINIONS BY           

DISSENTING OPINION BY           

| CHECKLIST | AFFIRM IN PART/ REVERSE IN PART/ REMAND | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUSTICE FERNANDEZ-VINA | X | |
| JUSTICE SOLOMON | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 7 | |